WILLIAM B. AITKEN, as executor of the last will and testament of Amy Edwards, deceased, for whom have been substituted Frank Brewster and Robert D. Brewer, administrators *cum testamento annexo* of the estate of Amy Edwards,

*v.*

ARTHUR B. SHARP, as executor, et al.

[Decided December 30th, 1921.]

1. A testatrix being possessed on the date of her will of ten P. Water Company bonds of the par value of $1,000 each, bequeathed ten M. water bonds of the par value of $1.000 each, without using language indicating an intention to pass bonds which she then owned, and when, in fact, she never owned any M. water bonds—*Held*, the legacy is general and not specific.

2. Where the testatrix divides the residue into four equal portions, dividing her will into paragraphs, and directs that one portion be divided between the several persons mentioned in each paragraph in fixed proportions—*Held*, the beneficiaries named take as individuals and not as a class, even though the persons in each paragraph constitute separate branches of testatrix's relatives.

3. Where a legacy or devise is given by the residuary clause and lapses, it does not sink into the residue, but passes to the heir or next of kin, unless a contrary intention appears on the face of the will. .

4. Where, in the third paragraph, testatrix directed that "all the rest, residue and remainder of my estate, real and personal, wheresoever situate, thus including lapsed legacies, I wish divided into four equal portions," and, in the fourth paragraph, she gives one portion to several persons—to some one-twelfth and to others three-twelfths—and a legatee of three-twelfths died in testatrix's lifetime, with the resultant lapse—*Held*, that as it plainly appears from the will that testatrix did not intend to die intestate as to any part of her property, the words "thus including lapsed legacies" takes the case out of the general rule. In such situation the legacy, in strictness. does not lapse or sink into the residue, but, more properly speaking, continues therein.

5. Where testatrix, in the residuary clause, directed that the residue should be divided into four equal portions, giving to several persons in one paragraph (fourth) one-twelfth and three-twelfths, respectively, and in another paragraph (fifth) another portion to several persons in one-fourths, and, in still another paragraph (sixth), to her executors in trust for life for two persons each one portion (thus the unit for division is forty-eighths), and one of the legatees (H. B.) in the fourth paragraph

dies in the lifetime of the testatrix, her three forty-eighths passes to the other residuary legatees in proportion to their several legacies, viz., by cutting down the number of divisible units from forty-eight to forty-five— thus, those receiving one-half of one-fourth (or one forty-eighth) will receive one forty-fifth of the whole residue.

6. The remainder mentioned in the sixth paragraph, devised to the parties in the fourth and fifth paragraphs, are vested and not contingent; in that on the death of the life tenants the remaindermen are entitled to the enjoyment without any collateral contingency concurring.

7. The remainder in the fifth paragraph, where testatrix devised to her executor in trust to pay the income to M. F. B. during her life, "and at her death, or if she die before me, then at my death to pay the principal to her children, if any, or if she die leaving no issue, then I direct my executor to pay the remaining one-fourth part to J. C. S., A. R. S. and H. S., share and share alike, and their shares, if they then be dead, shall go to their children or issue surviving, or, if none, then to the survivors or children of those dying leaving issue," is a contingent remainder.

8. Testatrix, after disposing of her entire estate, in the last paragraph of her will appointed an executor "hereby giving him full power to make sale of any real estate whereof I may die seized, at public or private sale, and to make sale of any personal property, and upon such terms and at such times as he may think best."—Held, such language does not operate as an equitable conversion at testatrix's death but only from the date of the actual sale.

9. Where testatrix, in her residuary clause, used the words "thus including lapsed legacies," and by said clause disposed of a blended mass of real and personal property, and it plainly appearing that she did not intend to die intestate, and it being determined that the language "lapsed legacies" refers to the personal property included in the legacy of residue which lapsed as well as other lapsed legacies, and it plainly appearing that the testatrix did not intend to differentiate between real and personal property in its disposition—Held, that the word "legacy" included all lapsed legacies and devises.

On bill, &c.

Messrs. Vredenburgh, Wall & Carey (with whom was Mr. David B. Simpson, of the New York bar), for the complainants.

Messrs. McCarter & English, for Marie F. Brewster and Laura L. Sayles.

Mr. Peter Hofstra (with whom was Mr. A. T. Sieker, of the New York bar), for Mary M. Ostrander and Laura J. Edwards.

*Messrs. Coult & Smith* (with whom were *Mr. A. Leslie Har-wood, Jr.,* and *Mr. L. D. Jennings,* of the Massachusetts bar), for J. W. Brewer, Helen F. Brewer, Millard Sayles Brewer, Fannie R. Brewer and Augusta Brewer.

*Mr. Thomas F. McCran,* attorney-general, for the state comptroller.

GRIFFIN, V. C.

The bill in this case is filed for the construction of the will of Amy Edwards, who died, a resident of Elizabeth, New Jersey, on June 12th, 1918, leaving a last will and testament dated December 31st, 1912.

In the first paragraph of her will she directs the payment of all her just debts and funeral expenses. In the second paragraph she gives certain general and specific legacies, one of which requires consideration. It is as follows:

"I also give and bequeath to said Mary Morris Ostrander and Laura J. Edwards ten Middlesex Water Company bonds, of the par value of one thousand dollars each."

The remaining paragraphs, all of which require interpretation, are as follows:

"*Third.* All of the rest, residue and remainder of my estate, real and personal, wheresoever situate. thus including lapsed legacies,. I wish divided into four equal portions.

"*Fourth.* I give a one twelfth part of one of such portions unto John Wilmon Brewer. a one twelfth part of one of such portions unto Augusta Brewer and a one twelfth part of one of such portions unto Helen Francis Brewer, the part given to any of the three persons last mentioned dying before me. to go to their issue, if any, and, if none. to the survivor or survivors, and I give a three twelfths part of such portion to Willard Sayles Brewer and a three twelfths part of such portion to Fanny R. Brewer, and the remaining three twelfths part of such portion to Helen Blackmar.

"*Fifth.* I give a fourth part of another of such portions to John C. Sharp. a fourth part to Arthur R. Sharp, a fourth part to Helen Sharp, and the remaining fourth part of such portion, thus including any additions thereto which may result from the provisions of this will. I give, devise and bequeath unto my executor hereinafter mentioned to hold in trust and pay over the net income thereof to Marie Francoer Brewster

during her lifetime, and at her death, or if she die before me, then at my death to pay the principal to her children, if any, or if she die leaving me issue, then I direct my executor to pay the said remaining fourth part of said portion to John C. Sharp, Arthur R. Sharp and Helen Sharp, share and share alike, and their shares, if they be then dead, shall go to their children or issue surviving, or, if none, then to the survivors or children of those dying leaving issue.

"*Sixth.* I give each of the two remaining fourth portions to my executor hereinafter mentioned, to be held by him in trust, to pay over the net income of one of such portions to Henry Sayles during his lifetime, and to pay over the net income of the other portion to Laura Larned Sayles during her lifetime, and upon the death of either, such one portion, and upon the death of both, the two portions, thus including accumulations and unpaid income, shall be paid to them to whom I have directed the first and second portions to be given, or to such as may then be entitled to receive the same in accordance with the provisions hereof respecting said portions.

"*Lastly.* I hereby nominate, constitute and appoint as the executor of this my last Will and Testament, William B. Aitken, of New York City, hereby giving him full power to make sale of any real estate whereof I may die seized, at public or private sale and to make sale of any personal property, and upon such terms and at such times as he may think best, and it is my will that my said executor shall not be required to give bonds for the faithful performance of the duties herein imposed on him. It is my wish that no sale of property be held upon the homestead premises in the City of Elizabeth, New Jersey."

1. The first question of doubt arises on the gift of ten Middlesex Water Company bonds. The testatrix never owned water bonds of that name, but, for some years prior to the making of the will and continuously down to the date of her death, owned ten Piscataway Water Company bonds of the par value of $1,000 each. There is nothing in the language of the will which indicated her intention to bequeath bonds which she then owned, but, on the contrary, she gave such bonds generally. Such language makes the legacy general and not specific. *In re United States Fidelity and Guaranty Co., 90 N. J. Eq. 254; Blair v. Scribner, 67 N. J. Eq. 583; Mecum v. Stoughton, 81 N. J. Eq. 319.*

2. The next question to be considered is whether the gifts and devises in the fourth, fifth and sixth paragraphs are to a class. The cases generally state the rule to be that where an aggregate fund is given to several persons, *nominatim*, to be divided between them in equal shares, if one dies before the testator his shares lapses, the gift being to them as individuals and not as a

class.   *Clark* v. *Morehous, 74 N. J. Eq. 658.*   In this latter case
Vice-Chancellor Howell cites with approval the opinion of Judge.
O'Brien (*In re Russell, 168 N. Y. 169*), who said: "A gift to a
class has been defined by a recent decision of this court to be a
gift of an aggregate sum to a body of persons uncertain in
number at the time of the gift, to be determined at a future time,
who are all to take in equal or some other definite proportions,
the share of each being dependent for its amount upon the actual
number.".

But it is urged that the evidence offered without objection in-
dicates that the testatrix made division of her residue among
four classes of her relatives, who were first and second cousins,
viz., in the fourth paragraph provision is made for the Brewer
branch, in the fifth paragraph for the Sharp branch, and in the
sixth paragraph for two branches of the Sayles family, and in
her division she gave the equivalent of one-fourth of one-fourth
(or one-sixteenth) to the first cousins, and one-twelfth of one-
fourth (or one forty-eighth) to the second cousins, and from this
it is argued that by separating her relatives in this manner she
intended to constitute them as classes and give to them as such.
This, however, is not sufficient to justify a finding that the tes-
tatrix gave to the persons mentioned in each paragraph as a class.
*Dildine* v. *Dildine, 32 N. J. Eq. 78.*

My conclusion, therefore, is that the parties mentioned in the
fourth, fifth and sixth paragraphs did not take as classes, and,
therefore, the share of Helen Blackmar did not pass to the re-
maining persons in the fourth paragraph.

3, 4. Helen Blackmar, mentioned in the fourth paragraph,
died in the lifetime of the testatrix. The question presented is,
What disposition should be made of her share?

It is contended on the part of certain legatees that, as the
legacy and devise is contained in the residue, on the death of the
beneficiary her share passed—the personalty to the next of kin,
and the real estate to the heirs-at-law; the opposite contention
being, in effect, that on her death it continued in the residue by
reason of the language contained in the third paragraph, "thus
including lapsed legacies."

The rule of law is that a general residuary bequest does not include any part of the residue itself, which fails (*Ward* v. *Dodd, 41 N. J. Eq. 414; Hawk. Wills 42; Garthwait's Executors* v. *Lewis, 25 N. J. Eq. 351; Humble* v. *Shore, 7 Hare 247*), and were it not for the words in the third paragraph, "thus including lapsed legacies," the share of Helen Blackmar would not pass as residue, but would be distributable among the next of kin and heirs-at-law. Notwithstanding this language, which evidences an intention that all legacies which might lapse or fail, including those in the residue, should form part of her residue, and be distributed accordingly, yet, in *Humble* v. *Shore, supra,* a contrary result was reached. In that case the testatrix, by her codicil, directed that her trustees should stand possessed of certain property upon certain trusts and that the same ultimately should sink into the residue of her estate and be disposed of accordingly. Vice-Chancellor Wigram held that such language was not sufficient to continue this residue in the residue, but that it went to the next of kin and heirs-at-law. This case was followed in a number of other English cases, with the judges, however, protesting against its sense and avoiding its effect wherever possible, until 1893, when, in *In re Palmer* (*Palmer* v. *Answorth*) (*1893*), *3 Ch. Div. 369,* it was overruled, Lindley, L. J., saying: "But when a testator revokes a gift of a share of the residue, alters the gift, and subject to that alteration directs that the share fall again into his residue, he does not mean that such share shall be treated as ultimately out of the residue, but as ultimately in it, and to go as part of it to those to whom he leaves it"

Lopes, L. J., in the same case, speaking of *Humble* v. *Shore,* said: "It is difficult to understand the principle of the decision or the reasoning by which it was arrived at," and after giving several illustrations, he said, "a more obvious and palpable attempt to defeat the intention of the testator it would be difficult to imagine."

In *In re Allan* (*Dow* v. *Cassaigne*) (*1903*), *1 Ch. Div 276,* where the residuary estate was divided into four shares, one of such shares to be held for the use, &c., of each daughter, with a

proviso that "if one or more of my said daughters dies without leaving issue," &c., "the share or shares of my said daughter or daughters so dying shall fall into and become part of my residuary estate and be held and distributed upon the same trusts as are hereinbefore declared thereof." The court below followed *Humble* v. *Shore* and held that there was an intestacy. Vaughn Williams, L. J., held that the judgment could not be sustained, and following *In re Palmer*, held that the lapsed legacies were divisible between the residuary legatees. See, also, *In re Whiting (1913), 2 L. R. Ch. Div. 1*, to the same effect.

I think it is therefore quite clear that, under the law of England at the present time upon the death of Helen Blackmar, the legacy would continue in the residue and be distributed as such. While in the early English cases the courts proclaimed the duty of the judge to be to ascertain the intent of the testator and then give it effect, yet, in their tenderness for the heir-at-law, leaned very strongly to defeat this purpose and create intestacy; and Mr. Justice Mitchell, in *In re Gray's Estate, 147 Pa. St. 67, 74; 23 Atl. Rep. 205*, gives the plain reason for this rule or purpose, where he says: "The rule is in effect a concession to the set policy of the English law, nowhere more severely asserted than in chancery, to keep the devolution of property in the regular channels to the heirs and next of kin whenever it can be done."

In considering this case, therefore, if the doctrine of *Humble* v. *Shore* has not received the approval of our courts in such manner as to be binding on this court, it is its duty to adopt such rule in the construction of this will as will be in accord with reason and common sense. *Humble* v. *Shore* was cited by Chancellor Runyon in *Garthwait's Executors* v. *Lewis, supra,* and by Vice-Chancellor Van Fleet in *Burnet* v. *Burnet, 30 N. J. Eq. 595,* but for the purpose only of stating the general rule. The cases had not to deal with a will where the testator provided that a legacy in the residue which lapsed should sink into the residue. And in *Ward* v. *Dodd, supra,* the same rule was announced, citing *Garthwait's Executors* v. *Lewis,* as well as *Hawk. Wills 42. Hawk. Wills* is also cited in the *Garthwait Case,* but, by referring to the citation to support the text in Hawkins, reliance is placed

# CASES IN CHANCERY, 1922. 343

*93 N. J. Eq.* Aitken *v.* Sharp.

on the English cases of *Humble* v. *Shore,* and others which were thereafter overruled in *In re Allan* and *In re Palmer, supra.*

Neither the industry of counsel nor my own examination have discovered any case in this state which decides that where a testator, either by express words or plain implication, provides that gifts of the residue shall not lapse but shall sink into or continue therein, the testator shall be regarded as dying intestate as to such gifts. I feel, therefore, at liberty to give effect to the intent of the testator regardless of the earlier English decisions above referred to. Taking the entire will into consideration, it is quite plain that the testatrix did not intend to die intestate as to any portion of her property. She anticipated that some of her beneficiaries might die in her lifetime, and made provision for such event, and, therefore, in the third paragraph, she not only gave to her residuary devisees and legatees all the rest, residue and remainder of her estate, both real and personal, in certain proportions, but she expressly provided that such residue should include lapsed legacies. It is argued that this language is applicable only to the general and specific legacies in the second paragraph mentioned. I think this interpretation is too narrow. She does not say that these words are applicable to the legacies theretofore given, but refers to legacies generally, and this language is broad enough to include all the legacies given in her will.

My conclusion, therefore, is that upon the death of Helen Blackmar the legacies so given to her continued in the residue to be distributed in accordance with the fourth, fifth and sixth paragraphs of the will.

5. Having determined that the share of Helen Blackmar continues as part of the residue for distribution among the parties mentioned in the fourth, fifth and sixth paragraphs, the next question of doubt is, How should the distribution be made of the personal property?

Her scheme of division was in forty-eighths—one forty-eighth being to second cousins, and three forty-eighths to the first cousins. On the death of Helen Blackmar, taking the precise shares given by the will, the remaining shares amount to forty-five forty-

eighths.   The question is whether the distribution should be
made on the basis of giving to them forty-five forty-eighths
(which would result in an intestacy as to a part) or reduce the
shares to forty-fifths and give to the parties the whole residue in
the several proportions given by the testatrix.   A case quite
similar to this is *Evans* v. *Field, 8 L. J. Ch. 264,* where testatrix
bequeathed the residue of her personal estate "and also all such
and so much of my personal estate the trusts, bequests and dis-
positions whereof in the will contained shall fail or become in-
capable of being performed" in eleven equal parts among differ-
ent persons.   A legacy of one-eleventh part lapsed.   It was held
that the lapsed legacy fell into the residue, which became di-
visible into ten parts amongst the remaining residuary legatees.
To the like effect is *In re Wand (1907), 1 Ch. Div. 391,* and *In
re Allan, supra.*

My conclusion, therefore, is that by the death of Helen Black-
mar the personal estate contained in the residue should be di-
vided into forty-fifths, and that the first cousins should receive
three forty-fifths and the second cousins one forty-fifth, each re-
spectively.

6. The sixth question is, Are the remainders mentioned in the
sixth paragraph devised to the parties mentioned in the fourth
and fifth paragraphs vested or contingent?

The distinction between a vested and a contingent remainder
is that the former is so limited to a person in being and ascer-
tained that it is capable of taking effect in possession or enjoy-
ment, on a certain determination of the particular estate without
requiring the concurrence of any collateral contingency.   The
uncertainty as to the remainderman ever enjoying the estate,
which is limited to him by way of remainder, will not render
such remainder a contingent one, providing he has, by such limi-
tation, a present absolute right to have the estate the instant the
prior estate shall determine; but the absence of such absolute
right renders the estate a contingent remainder.   *Keen* v. *Plume,
82 N. J. Eq. 526; affirmed, Idem. 645.*

There is nothing in the sixth paragraph which postpones the
period of vesting in the remaindermen.   It is merely the time of

enjoyment. The language of the third paragraph is sufficient to pass all the estate of the testatrix otherwise undisposed of by the will. My construction of this sixth paragraph is that the testatrix merely gave to her executor in trust the two remaining fourth portions to pay the income thereon to Henry and Laura during their lifetime. She might readily have stopped at this point; but, in order to close up her estate, she then directed that upon the death of either, or both, as the case may be, payment should be made to them to whom she had directed the first and second portions to be given, or "to such as might be entitled to receive the same in accordance with the provisions hereof respecting said portions;" in other words, having given the remainder to the parties in the fourth and fifth paragraphs, she merely directed that the personalty be divided among the parties therein named in the same manner as if it had always been there, with no idea of postponing the vesting of the estate.

My conclusion, therefore, is that upon the death of Henry Sayles, which occurred after the death of the testatrix, his fourth was divisible among the persons mentioned in the fourth and fifth paragraphs in the manner above indicated; and that the only duty enjoined upon the executor with respect thereto is to pay it to them severally in the proportions above stated; and such course may be followed upon the death of Laura Larned Sayles.

7. The next question presented is whether the devise and bequest contained in the fifth paragraph to the executor in trust for Marie Francoer Brewster for her life constitutes a vested or contingent remainder.

This is clearly a contingent remainder. *Keen* v. *Plume, supra; Kates, Trustee,* v. *Walker, 82 N. J. Law 157; Post* v. *Herbert's Executors, 27 N. J. Eq. 540.*

8. The eighth question propounded is whether there was an equitable conversion of the lands, and, if so, when?

It is argued on one side that an equitable conversion took place on the death of the testatrix. Others urge, to the contrary, that it took place when and as the lands were sold, and not before. The rule is laid down by Chancellor Zabriskie in *Wurts' Execu-*

*tors* v. *Page, 19 N. J. Eq. 375,* that "when a testator has positively directed his real estate to be sold and distributed as money, it will be considered, for the purpose of succession, as personal," but where he simply authorizes and empowers the executor to do so, "the real property could not be considered as converted into personal property until actually sold." See, also, *Meeker* v. *Forbes, 84 N. J. Eq. 271; affirmed, 86 N. J. Eq. 255; Keen* v. *Plume, 82 N. J. Eq. 645* (in the court of errors and appeals).

My conclusion, therefore, is that as there was no imperative direction to sell, the real estate preserved its character as such until actually sold by the executor, and thereafter assumed, by actual conversion, the character of personalty.

9. One serious question is presented which calls for solution, viz., Do the words "lapsed legacies," in the third paragraph, include lapsed devises?

If this will had been drafted by one without legal learning, the word "legacy" could readily be construed to apply to real as well as personal property, in view of the plain purpose to completely dispose of all her property and not die intestate as to any part thereof. *Hewill* v. *Green, 77 N. J. Eq. 345 (355); Burwell* v. *Mandeville's Executor (1844), 2 How. 560; Hardacre* v. *Nash, 5 T. R. 716; 101 Eng. Reprint 398; Hope, ex dem. Brown,* v. *Taylor, 1 Burr. 269; 97 Eng. Reprint 308.*

Here, however, the will was drafted by one learned in the law who used a word technically applied to personal property only, but intended thereby to pass real property as well. It was a mere slip in the selection of a word, or in the omission, following the word "legacies," to add the words "and devises." The question, therefore, arises, What difference in treatment should be accorded in a case where a will is drawn by one learned in the law and one unlearned in the law? My judgment is, that it resolves itself into a question of evidence, where the burden is more strongly upon the person seeking to prove that the word was not used in its technical sense where the instrument was drafted by one learned in the law than in the case where it was drawn by one unlearned in the law. As above stated, the word "legacy" is considered as applying to all legacies, whether within or without

the residuary clause. Her personal estate consists of about three hundred thousand dollars, and her real estate of about fifty thousand dollars, and they were treated as a blended mass in the residue.

There is nothing in the will to indicate that the testatrix intended to separate the real and personal property in this blended mass for the purpose of her will; on the contrary, it is plainly apparent that as the personalty went so went the realty. She was dealing with the mass, regardless of whether the property was real or personal, and to say that the use of a technical but inapt word to express her purpose would prevent the passing of the real estate would be doing violence to her plain intent. This is unlike a case where a situation not contemplated by the testator arose, and no provision was made to meet it, as in *Shreve* v. *Shreve, 17 N. J. Eq. 487.* Here the testatrix anticipated the situation and made provision to meet it, but in doing so used an inapt word to express the purpose. In my view, this should not be regarded as sufficient to defeat the plain will of the testatrix. My conclusion, therefore, is that the words "thus including lapsed legacies," in the residuary clause, cover both real and personal property.

The interest of the attorney-general in this suit is to have it settled upon what principle the collateral inheritance tax should be assessed. Having determined whether the remainders are vested or contingent, I presume the amount of the tax can be automatically assessed without the further order of the court. If, however, I am in error as to this, counsel at the time of the signing of the decree, may present their views.