15 N.J. Super. 583 (1951)
83 A.2d 837
IN THE MATTER OF THE ESTATE OF PATRICIA MOLONEY, DECEASED.
Superior Court of New Jersey, Hudson County Court Probate Division.
Decided September 12, 1951.
*584 Mr. George P. Moser, attorney for Hudson Trust Company.
Mr. William A. O'Brien, attorney for Annie M. Crowley.
COOLAHAN, J.C.C.
This matter comes before the court on complaint and order to show cause filed by the Hudson Trust Company, executor under the will of Patricia Moloney, deceased. The executor seeks a judgment directing it to pay over to the person or persons entitled a cash balance of $3,468.83 remaining in its hands after payment of the estate's just debts, expenses and legacies, including a one-fourth share of the residue to Annie Moloney Crowley. The undistributed *585 portion of the estate with which we are concerned in this action consists of three-quarters of the residue which has not been distributed for the reason that three of the four named residuary legatees predeceased the testatrix. As the personal estate of the testatrix was insufficient to satisfy the purposes of her will, the Court of Chancery ordered and confirmed the sale of realty of which she died seized, so that the remaining fund retains for all purposes the character of realty.
The testatrix, Patricia Moloney, died on or about December 10, 1945, leaving a last will dated April 29, 1937, which was duly admitted to probate. Under the will, testatrix, after making provision for several moderate specific and general legacies to non-relatives, bequeathed the residuary of her estate as follows: "to pay to the brothers, John and Michael Moloney, sons of my father's brother, and to sisters of John and Michael, Annie and Bridget, the residue of the estate after all previous bequests are made." Of the four residuary legatees named, only Annie Moloney Crowley survived the testatrix. Bridget Moloney had passed on many years prior to the execution of the will, while John and Michael Moloney died in 1943 and 1944 respectively.
Although diligent inquiry on the part of the executor revealed that John Moloney was survived by his widow, Annie, and that Michael Moloney left an heir in the person of his son, Thomas, it is of no avail, for the residuary gifts cannot be passed on to them as the anti-lapse provisions of R.S. 3:2-18 do not operate, where, as in this case, the relationship of the devisees to the testatrix is as remote as that of first cousins. Brown v. Fidelity Union Trust Co., 126 N.J. Eq. 406, 9 A.2d 311 (Ch. 1939).
In addition to Annie Moloney Crowley and the two heirs of the above-mentioned deceased legatees, it appears that testatrix probably has other relatives living in Ireland and Australia. However, nothing, neither their number nor their degree of kindred, is known of them. It does appear, however, that testatrix has had no contact with any of her kin *586 for over 20 years preceding her death, and that in all probability she was not even acquainted with any of her living relatives with the exception of the residuary legatees.
The pivotal issue here presented is whether the shares of the residuary devisees who predeceased the testatrix remain, so to speak, in the residue to be taken by the sole surviving residuary devisee, Annie Moloney Crowley, or whether these gifts fall without the residue and pass to testatrix' heirs at law, whoever they may be, under our statutes governing intestate descent.
In early English cases the rule evolved that, while lapsed specific and general legacies fell into the residue to be taken by the residuary legatees, nevertheless, should a portion of the residue itself lapse, it would not remain in the residue but would pass as intestate property. Bagwell v. Dry, 1 P.W. 700; Page v. Page, 2 P.W. 489; Skrymsher v. Northcote, 1 Swanst. 570; Leake v. Robinson, 2 Mer. 392. The reason often assigned for this rule was that lapsed residuary gifts were themselves part of the residue and there could be no "residue of a residue." Such reasoning is obviously more euphonious than enlightening and appears rather to play on words than to point out any real distinction. The reasons for allowing lapsed specific and general legacies to fall into the residue apply with equal force in favor of allowing all the residue to go to the surviving residuary legatees. In the oft-cited Skrymsher v. Northcote, supra, it was held that "a part of the residue of which the disposition fails, will not accrue in augmentation of the remaining parts as a residue of a residue, but instead of resuming the nature of residue, devolves as undisposed of." Hence, another ground frequently given for application of the rule is that since the testator assigned specific portions of the residue to each of the residuary legatees, they therefore could not be allowed to take greater shares than "the intent of the will." It is submitted that this view is altogether too myopic in scope to be considered either sound, satisfactory or convincing. By the very fact of the appointment of general residuary legatees, *587 the ordinary testator manifests his desire that all his earthly possessions pass to the beneficiaries designated in his will. It is far from being in accord with the realities to presume that a testator would intend his residuary legatees to take a certain proportional share of an undetermined and uncertain residue and no more, and that lapsed portions of this unknown bequest should go to his heirs or next of kin. To the contrary, from the fact that the testator made a will in the first instance, her intention can be construed with far greater certainty to have been to exclude her heirs and next of kin who would have taken her property by operation of law had she died without a will.
The court in In re Gray's Estate, 147 Pa. St. 67, 23 A. 205 (Sup. Ct. 1892), it is felt gave the most accurate reason for the rule when it declared, "the rule is in fact a concession to the set policy of English law, nowhere more severely asserted than in chancery, to keep the devolution of property in the regular channels, to the heirs and next of kin, wherever it can be done." Thus, in their solicitude for the heir at law, the English courts defeated the manifest intention of the vast majority of testators by creating intestacy in situations where it was rarely, if ever, intended. At the same time these courts ostensibly held it their duty to give effect to the intentions of testators.
Despite the fact that the rule is subversive of the great canon of construction, the carrying out of the intent of the testator, is wrong in principle (In re Gray's Estate, supra) and has no sound reason to support it, it has been unfortunately adopted by most of the American jurisdictions deciding the question. The only perceptible reason for its adoption is that the English common law became our common law in so far as it was not subsequently modified by us. A survey of the New Jersey cases following this English rule did not disclose a single case which either discussed the merits of the rule or attempted to justify it on grounds of sound reasoning or public policy. Garthwaites' Executor v. Lewis, 25 N.J. Eq. 351 (Ch. 1874); Hand v. Marcy, 28 *588 N.J. Eq. 59 (Ch. 1877); Ward v. Dodd, 41 N.J. Eq. 414 (Ch. 1886); Damron v. Mast, 121 N.J. Eq. 489 (Ch. 1937); Rippel v. King, 126 N.J. Eq. 297 (Ch. 1939); Lawes v. Lynch, 7 N.J. Super. 584 (Ch. Div. 1950). On the other hand, it appears that, whenever the rule has been considered on its merits, it has been severely criticized both by textwriters and by courts of highest repute. In re Gray's Estate, supra; Wright v. Wright, 225 N.Y. 329, 122 N.E. 213 (Ct. App. 1919); Aitken v. Sharp, 93 N.J. Eq. 336, 115 A. 912 (Ch. 1922); Corbett v. Skaggs, 111 Kan. 380, 207 Pac. 819 (Sup. Ct. 1922); Bronson v. Pinney, 130 Conn. 262 (Sup. Ct. Err. 1943); In re Zimmerman's Estate, 122 Neb. 812, 241 N.W. 553 (Sup. Ct. 1932); In re Dunster, 1 Ch. 103; In re Waln's Estate, 156 Pa. 194, 27 A. 59 (Sup. Ct. 1893); In re Waterbury's Will, 163 Wis. 510, 158 N.W. 340 (Sup. Ct. 1916); Prison Ass'n. v. Russel Adm's., 103 Va. 563, 49 S.E. 966 (Sup. Ct. App. 1905); 2 Jarman on Wills (6th ed.) 1056-1058; 10 N.Y.U. Law Qtrly. 97; 31 Mich. Law R. 585; 31 Yale Law J. 782. Nevertheless, only the courts of the states of Kansas (Corbett v. Skaggs, supra) and Indiana (West v. West, 89 Ind. 529 (Sup. Ct. 1883)) have clearly and unequivocally rejected the rule judicially, although there are many cases in various jurisdictions in which the courts have avoided the unjust operation of the rule by liberal constructions of residuary clauses (Gordon v. Ehringhaus, 190 N.C. 147, 129 S.E. 187 (Sup. Ct. 1925); Hammond v. Hammond, 234 Mass. 554, 125 N.E. 686 (Sup. Jud. Ct. 1920)), or by finding exceptions to the rule (Aitken v. Sharp, supra; In re Zimmerman's Estate, supra). Several of the courts which were critical of the rule, however, found it too well settled in their respective jurisdictions to be disturbed. Hence, it would seem that in their reverence for stare decisis these courts would perpetuate a rule conceived in admitted judicial error unless and until their legislatures release the bonds with which these courts regretfully but insistently bind themselves. In demonstrating the proper function of stare decisis in the judicial process, Chief Justice Vanderbilt, in *589 his outstanding dissenting opinion in Fox v. Snow, 6 N.J. 12 (1950), commented as follows:
"To hold, * * *, that the only way to overcome the unfortunate rule of law that plagues us here is by legislation, is to put the common law in a self-imposed straitjacket. Such a theory, if followed consistently, would inevitably lead to the ultimate codification of all of our law for sheer lack of capacity in the courts to adapt the law to the needs of the living present. The doctrine of stare decisis neither renders the courts impotent to correct their past errors nor requires them to adhere blindly to rules that have lost their reason for being. The common law would be sapped of its life blood if stare decisis were to become a god instead of a guide. The doctrine when properly applied operates only to control change, not to prevent it."
In this view the prevalent hesitancy in overruling the archaic and unsound rule confronting us here is justly unappreciated.
Of late the legislatures of the states of Pennsylvania, Ohio, Rhode Island, as well as our own New Jersey, in evident recognition of the error inherent in the English rule, have passed statutes providing that the bequests or devises given by will to residuary legatees who predecease their testators shall vest in the surviving residuary legatees in the absence of any contrary intent manifested by the testator. 20 P.S. Pa. § 180.14; Ohio General Code § 10504-73; Gen. Laws R.I. 1938, c. 566, § 7; N.J.S.A. 3:2-19.1. Although our New Jersey statute is not operative in the instant case, as it applies only where the testator died subsequent to July 3, 1947, it is considered highly significant as a reflection of the public policy of our modern State.
Even prior to the enactment of N.J.S.A. 3:2-19.1, Vice-Chancellor Griffin in 1921 in the case of Aitken v. Sharp, 93 N.J. Eq. 336, supra, although recognizing the English rule as the general rule, stated as follows: "Neither the industry of counsel nor my own examination have discovered any case in this State which decides that where a testator, either by express words or plain implication provides that gifts of the residue shall not lapse but shall sink into or continue therein, the testator shall be regarded as dying *590 intestate as to such gifts." The vice-chancellor then construed the clause "thus including lapsed legacies" appearing in the residuary clause of the testatrix' will as plainly indicative of the testatrix' intention not to die intestate as to any part of her property. He held that the quoted residuary phrase took the case out of the general rule so that the lapsed residuary gifts passed to the surviving residuary legatees. Inasmuch as such a phrase has been said to be mere surplusage in that lapsed specific and general legacies ordinarily fall into the residue (Nickerson v. Bragg, 21 R.I. 296, 43 A. 539 (Sup. Ct. 1899)), and the phrase strictly construed amounts to no more than an expression by the testatrix of the prevailing law, the case all but expressly overrules the English intestacy rule. However this may be, it is at least apparent that there are few lapsed residuary gift cases which would not clearly come within the "plain implication" exception to the rule announced in the case.
It has been urged by the executor that gifts of the residue here involved are gifts to a class so that as a consequence the shares of the deceased members of the class ipso facto vest in the surviving member of that class. In spite of the difficulty experienced by various courts in finding a class gift, where, as here, the residue is given to individuals nominatim and the class at the time of the execution of the will is certain in the sense that further increases are not possible, the contention of the executor in my opinion has much merit. The only universal rule for determining whether testamentary gifts to several parties are gifts to them as a class or as individuals is to ascertain the intention of the testator. Brown v. Fidelity Union Trust Co., 134 N.J. Eq. 217, 34 A.2d 805 (Ch. 1943); Walker v. First Trust and Savings Bank, 12 Fed.2d 896 (C.C.A. 8, 1926). The very function of a class is in effect to provide survivorship among members of a group when the testator has failed to do so, but would probably be best pleased with that disposition. The result is one which courts reason would most likely please the kind of testator who made the kind of will under examination. *591 The doctrine that a testator intends a class when he does not say so in so many words is a beneficent fiction. Cooley, 49 Harvard Law R., 903.
From the contents of Patricia Moloney's will and from the circumstances surrounding her at the time of its execution, it is obvious that she intended to benefit only the beneficiaries specifically named by her. Indeed it appears that she knew no other relatives whom she could have desired to benefit. The phraseology of her residuary clause is simple and contains no words, such as "share and share alike," "to be divided equally," which have been held on occasion to be the indelible indicia of gifts in severalty. Rather she chose general and unrestricted language which would by no means indicate an intent to limit her residuary legatees to implied fractional shares or to render them tenants in common. It is unquestionable that the testatrix, motivated by love and affection for her father and for his brother, her uncle, intended that the small bulk of her estate should pass only to her said uncle's children who appear at the time of the execution of the will to have been her only living relatives with whom she had come in contact and for whom she felt natural affection.
Whether or not these gifts be considered to have been made to a class, the intention of the testator is fundamentally determinative of the disposition of the remaining residuary estate.
In accordance with the views expressed above, I therefore order the executor to pay over to Annie Moloney Crowley, the surviving residuary legatee, the entire undistributed portion of the estate. In view of this decision, it becomes unnecessary to determine the relative rights of the State of New Jersey and the City of Union City on the escheat question raised in the complaint.