No. 16,420.

ESTATE OF BOYLE.
FEENEY ET AL. *v*. MAHONEY, EXECUTOR ET AL.
(221 P. [2d] 357)

Decided May 8, 1950.

Mr. C. Clyde Barker, for plaintiffs in error.

Mr. Thomas M. Tierney, for defendants in error Mike O'Boyle and John O'Boyle.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

This action involves a review of a judgment of the county court entered on a petition of the executor for construction of the will of Joseph P. Boyle, deceased, which was admitted to probate on January 6, 1949. It concerns the question of a lapse of a legacy, and also a lapse of a part of the residuum.

On March 23, 1943, Joseph P. Boyle, the deceased, executed the will involved. He thereafter became insane, and died October 21, 1948. Bridget Feeney, a sister, and one of the beneficiaries under his will, preceded him in death. She was the mother of John Feeney, a minor, one of the plaintiffs in error, and the wife of Patrick Feeney, coplaintiff in error.

After directing the payment of debts, including funeral and testamentary expenses, the will provided as follows:

"Second: To my beloved sister, Mrs. Bridget Feeney, of 1519 - 3rd Avenue, New York City, New York, I give and bequeath the sum of SIX THOUSAND DOLLARS ($6,000.00), for herself, her heirs, personal representatives and assigns, forever; and also bequeath to her the sum of Twenty-five Hundred $ insurance of The Capital Life Insurance Company of Denver

"Third: To my beloved brother, Mike O'Boyle, of 30-40 - 29th Street, Astoria, Long Island, New York, I give and bequeath the sum of FOUR THOUSAND DOLLARS ($4,000.00), for himself, his heirs, personal representatives and assigns, forever.

"Fourth: To my beloved brother, John O'Boyle, of 305 East 85th St, New York City, New York, I give and bequeath the sum of FOUR THOUSAND DOLLARS ($4,000.00), for himself, his heirs, personal representatives and assigns forever.

"Fifth: All the rest, remainder and residue of my property, of every kind and character, real, personal and mixed, and wheresoever situate, I give, devise and bequeath unto my sister, Mrs. Bridget Feeney, my beloved brother, Mike O'Boyle and my beloved brother, John O'Boyle, share and share alike and in equal portions, for themselves, their heirs, personal representatives and assigns, forever."

The will was prepared by one of the executors, an attorney, whose experience and competence is not only well established, but admitted by all counsel here appearing.

In the petition for construction of the will, petitioner alleged the death of Bridget Feeney, and on the hearing, the court, after taking some testimony and hearing the arguments of counsel, entered its judgment as follows: "1. That the legacy of $6,000 given to Mrs. Bridget Feeney lapsed by her death prior to the death of the testator and was and is a part of the residuary estate. 2. That Mike O'Boyle and John O'Boyle each take one-half of the residuary estate, including said lapsed legacy

of $6,000, and including the lapsed residuary estate given to Mrs. Bridget Feeney; the said Mike O'Boyle and John O'Boyle each take one-half of the entire estate."

This judgment was upon a finding in answer to the three questions propounded in the petition: "(a) Does the legacy of Six Thousand Dollars ($6,000.00) given to Mrs. Bridget Feeney, who predeceased the testator, pass into the residuary estate, or should it be distributed to the heirs at law as intestate property? (b) Does the legacy of Six Thousand Dollars ($6,000.00) to Mrs. Bridget Feeney, or the residuary estate which she would have received had she survived the testator, or either of said legacies, go to the heirs of Mrs. Bridget Feeney? (c) Do the said Mike O'Boyle and John O'Boyle take the entire residuary estate, or do they each take one-third of the residuary estate, with the other third of said residuary estate passing to decedent's heirs at law as intestate property?"

On the questions involved, we are asked by counsel for plaintiff in error, by well-reasoned briefs, to substitute our construction of the will before us for that of the concededly able judge of the county or probate court. This we are slow to do unless it appears that his construction is inconsistent with what seems to be the entire scheme of the will. So far as the decisions of this court are concerned, we are without pattern, or precedent on the exact questions that have here arisen. Decisions of other tribunals, while based on closely similar testamentary expressions, are helpful, although they come to us under slightly different environment of the testator, and, in many instances, without controlling statutes.

This case rests squarely on the answer to two questions: Did the legacy of Bridget Feeney, a sister of the testator, lapse and sink into the residue of the estate upon her death prior to that of the testator? If her legacy lapsed and became a part of the residue, of which, by the residuary clause, she was a named legatee,

did her share of the residue further lapse into the residue, or did it become intestate estate?

▮ Under certain circumstances our legislature has provided against the lapse of a legacy as well as providing for the disposition of a legacy if lapsed. When applicable, these statutory provisions must control. These provisions are by 1949 amendments and are under section 1 (Section 45) and section 2 of chapter 254, Session Laws of 1949, and are: " 'Section 45. Whenever a devisee or legatee in any last Will, being a descendant of the testator, shall die before such testator, and no provisions shall be made for such contingency, the issue, if any there be, of such devisee or legatee, shall take per stirpes the estate devised or bequeathed, as the devisee or legatee would have taken had he survived the testator, and if there be no such issue at the time of the death of the testator, the estate disposed of by such devise or legacy shall be considered, treated and be deemed a part of the residue of the estate of such testator.' Section 2. If any devise or legacy under any will shall lapse, such devise or legacy shall be considered, treated and be deemed a part of the residue of the estate of the testator."

Bridget Feeney was a sister of the testator, to whom he was unquestionably devoted. They lived together for many years and her love and affection for him was shown by her care and attention in his failing days. His preference to her is clearly and unmistakably evidenced by providing that she be the first taker under the will; by the increased amount of the specific legacy, which was augmented by his gift to her of $2,500 life insurance; and finally by intending that she share equally in any residue of his estate. The specific legacy to her provided that it was " * * * for herself, her heirs, personal representatives and assigns, forever; * * *." The residuary clause provided " * * * unto my sister, Mrs. Bridget Feeney, my beloved brother, Mike O'Boyle and my beloved brother, John O'Boyle, share and share

alike and in equal portions, for themselves, their heirs, personal representatives and assigns, forever."

Plaintiffs in error are John Feeney and Patrick Feeney, respectively a minor son, and the husband of Bridget Feeney, deceased. It is shown that the testator became mentally incompetent and finally insane prior to the death of his sister, Bridget Feeney, and, therefore, no opportunity was presented for a change in his will after the happening of the event of his sister's death, and such event not being contemplated.

At this point it is helpful to quote the findings of the learned trial judge, with a part of which we are in harmony:

"First. It is the opinion of the court that the legacy to Mrs. Feeney did lapse; that the language used is language of limitation or description and not language of substitution. The authorities seem to agree that ordinarily if the language in this will had been to Mrs. Feeney "and" her heirs, etc., that in most instances this would have created language of limitation and not substitution; whereas, on the other hand, if the word "or" had been used, it would have constituted language of substitution and not that of limitation or description. The authorities are not uniform in this construction, but that appears generally to be the rule. On the other hand, in the case at bar, neither the word "and" nor "or" was used. In such instance Mr. Murdock quotes cases which are in point to show that generally this constitutes language of limitation and not of substitution, unless of course there is language in any other portion of the will which indicates a contrary intent, which I am unable to find. Strengthening this view is the fact that the clause in the will first above quoted concludes with the expression "and assigns," which would raise the presumption that the preceding commas were to be construed as "and" rather than as "or." In other words, it is more logical to assume that since the clause ends with "and," that that word should be brought forward to substitute

for commas rather than to bring the word "or" into this language, for no reason at all.

"Second. There seems some authority for the proposition that, since Mrs. Feeney, who predeceased the testator, is also one of the three named residuary beneficiaries, that her specific legacy, having lapsed, would not pass into the residuary clause, as would be true in all other cases. This rule is announced in certain Illinois cases. It seems to the court that this is purely an arbitrary rule, and that the contrary rule named in Massachusetts and other authorities is much more reasonable. In other words, the purported reason for this distinction recited in the Illinois cases is the improbability of assuming that a testator would refer in a residuary clause to someone who is dead. As I view the matter, this is no more improbable than the fact that he would refer to someone who was dead in a specific or general legacy clause. In either instance the reason is obvious: it is either due to the failure of a testator to rewrite his will under changing conditions, which isn't unusual, or to the fact that a testator didn't know of changing conditions, or the fact, such as here, that the testator became legally incapable of changing his will; but, in any instance, whatever the reason is, it seems to this court that it would be equally applicable whether it applied to a residuary clause on the one hand, or to a specific or general legacy on the other. It is therefore the opinion of this court that the rule which provides that a lapsed legacy passes into the residue should apply in this case, even though one of the residuary beneficiaries named is the person whose death has caused the lapsed legacy.

"Third: This brings us to the question of what happens to the interest of Mrs. Feeney as a residuary beneficiary, she having died before the death of the testator. One line of authorities would sustain the proposition that her interest as residuary beneficiary would lapse and become intestate property and pass to the heirs-at-law of the testator. This court rejects that disposition of

the property, first, on the ground that the rule of law, often announced in this and other states, avoids an intestacy as to any portion of an estate if a reasonable construction of the will warrants disposing of such property under the terms of the will. The court believes that a reasonable reading of the residuary clause in this case shows that the intent of this testator would be more nearly carried out by dividing the entire residue between his two surviving brothers, Mike O'Boyle and John O'Boyle, than would be accomplished by declaring one-third of the residue intestate property, thereby passing the same to heirs-at-law heardly [hardly] known by this testator. The same would be true if it were attempted to pass such third interest of Mrs. Feeney to her heirs-at-law or issue. This latter disposition could only be accomplished if the language in the residuary clause "for themselves, their heirs, personal representatives and assigns, forever" were to be used as words of substitution rather than of limitation. The reasoning of the court in construing such language as being language of limitation and not of substitution is the same as above referred to in connection with the specific bequest of $6,000.00, because the language here is identical with the language there, except that it is in the plural. In this connection reference should be made to the Wisconsin case, 290 N.W., 290, in which the court gave a different construction to similar language in the residuary clause than they had given in construing a specific or general legacy; but that case must be distinguished on the ground that the residuary clause there, unlike the specific legacy there and unlike the residuary clause in the case at bar, used the language "and to their respective heirs," etc., etc., and the court gave considerable weight to the use of the word "respective" as showing an intent by the testator as using words of substitution. Therefore, the court finds that Mike O'Boyle and John O'Boyle each take one-half of the estate of the deceased in the residuary clause."

■ Decisions are legion to the effect that wills are to be favorably construed to effectuate the testator's intent, and to this end, words may be transposed, supplied or rejected. It is evident from the findings of the trial court that such transposition was indulged. The court, in construing the phrase, "for herself, her heirs, personal representatives and assigns, forever" has observed the obvious, that neither the word "and" nor "or" was used, and by and in such construction has determined that it is more logical to assume that since the clause ends with "and assigns," that the word "and" should be brought forward to substitute for the commas rather than to bring the word "or" into this language for no reason at all.

■■ Aiming at an avoidance of a partial intestacy, such rule seems to be generally accepted and is supported by the text with many cited cases in 57 American Jurisprudence, page 959, section 1430, which is as follows: "Although the common-law rule that words of inheritance are necessary to create an estate in fee by will is not generally recognized today, the doctrine, established when such rule was still operative, that the words "and his heirs" (sometimes with the conjunction omitted, as in a gift "to A, his heirs and assigns") are to be regarded merely as words of limitation and not words of substitution when employed in a testamentary gift to a designated individual and hence must be regarded as not preventing a lapse of the gift upon the death of the donee in the testator's lifetime, unless an intention to make a substitution can be gathered from other language of the will, is well established in modern jurisprudence. Correlation of the word 'assigns' with the word 'heirs' in this connection is regarded as fortifying the conclusion that 'heirs' is to be construed as a word of limitation when so used, and the normal preference for a construction which will avoid a partial intestacy will not influence application of the rule in question."

We observe the parenthetical phrase within the above

section of the text, which, by close similarity in principle at least, meets our problem in hand. It is well settled that the employment of the word "and," or if it can be logically and reasonably supplied, is a word of limitation and not of substitution and is generally so held to be. However, use of the word "or" is generally held to be a word of substitution or purchase. We must take the will as it comes to us and not supply words that were available to the testator or his capable attorney, and not used, if we are not compelled to do so by the otherwise clear and unmistakable intent of the testator. It is clear that the testator here intended that if the legatee lived, the bequest to her and to her heirs and assigns was absolute and forever, and there is no clear indication of substitution in the case of the death of the legatee. With these conclusions, we are in harmony with that part of the judgment which holds that the specific legacy lapsed into the residue of the estate, and that part of the judgment is affirmed.

■ As to the second question, we now find the specific legacy of Bridget Feeney in the residue of the estate for distribution subject to an interpretation of the residuary clause and the statutes involved and hereinabove quoted.

We cannot hold, as contended for, that Bridget Feeney is a descendant of the testator as provided in the statute to prevent a lapse of the legacy. No such contingency having been provided for, the estate disposed of by such specific legacy is now to be deemed a part of the residue of the testator's estate. The exact problem in disposing of the residue, as we now find it, is contemplated by the same happening that caused the lapse of the specific legacy, that of the death of Bridget Feeney, one of the residuary legatees. The trial court determined, and so found, that the lapsed legacy, being a part of the residue of the estate, was to be divided equally between the two surviving legatees. This is tantamount to holding that the lapsed legacy always remains a part of the testate

estate regardless of the fact of the lapse of the residuary legacy by death of the legatee. We do not adhere to this part of the court's judgment, but determine that such lapsed residuary legacy becomes a part of an intestate estate regardless of the generally accepted rule in an avoidance of partial testacy.

It is contended by counsel for the executor, defendant in error, that this lapsed residuary legacy is controlled by section 2 of the statute above quoted wherein it is said, and we again repeat, "If any devise or legacy under any will shall lapse, such devise or legacy shall be considered, treated and be deemed a part of the residue of the estate of the testator." It is our studied opinion that the above quoted section of the statute refers to the lapsing of legacies outside the residue, and is not so all-inclusive as to include the lapsing of a residuary legacy under any and all circumstances. The legislature was treating that part of an estate which had not yet become a part of the residue. Had it intended to include the lapsing of residuary legacies, it failed to employ available words to effectuate that intention.

We believe the trial court did not fully consider the terms of the residuary clause in the light that by the terms of the clause, the residual estate was given to the three persons named, that is, Bridget Feeney, Mike O'Boyle, and John O'Boyle, individually, and not as a class. There is nothing in the clause which shows or even indicates that the lapsed gift should pass under the residuary clause to the surviving residuary legatees. "It is now settled, by the weight of authority, that a lapsed part of the residuum does not itself pass into the remainder of the residuum; but that it passes to testator's next of kin as intestate property." Page on Wills (2d ed.), page 2087, section 1257, citing the decisions of many states.

"Where legacies are made to two or more to be divided between them and not to them as a class and

one dies, the gift to him alone will lapse and pass as intestate property." Schouler on Wills (6th ed.), vol. 4, p. 2671, §3238, citing many cases.

That each of the residuary legatees here took individually and not as a member of a class, and as tenants in common and not joint tenants, we feel is beyond dispute. The logic and reasoning on this question in the case of *Dorsey et al. v. Dodson et al.,* decided by the Supreme Court of Illinois, 203 Ill. 32, 67 N.E. 395, seems unanswerable and is: " 'Where legacies are given to several legatees, and the residue is bequeathed to the same legatees, it follows that the residue will not include a lapsed legacy to one of them.' To hold, in such a case, that the testator intended the lapsed legacy to fall into the residuum, was said in *Craighead v. Given,* 10 Serg. & R. 351, to hold that the testator intended to bequeath to one who died a portion of the residue happening in consequence of his own death,—a construction which could never be supported. Where a testator gives specific legacies to several legatees, and gives the residue to them as tenants in common, if each one receives his share of the residue over and above the specific legacies he receives exactly what the testator intended to give him. Having given to each specific sums and a specific share of the excess over the total of such sums, the proportion of those who live is not to be enlarged by a lapsed legacy. It is not to be inferred that the testator intended that a lapsed legacy to one should fall into the residue, so that the survivors should receive a different and increased proportion of the testator's estate. (*Green v. Pertwee,* 5 Hare, 248; *Silcox v. Nelson,* 24 Ga. 84; *Lombard v. Boyden,* 5 Allen, 249; *Lloyd v. Lloyd,* 4 Beav. 231.) Not only did the specific legacy to Henrietta Dorsey lapse, but her share of the residuary estate also lapsed, and to carry the lapsed legacy to her forward into the residuum would be to add one-third of it to another lapsed legacy to her and augment the shares of Fanny Knapp and the estate of John J. Green with the

remaining two-thirds, contrary to the rule of law in such cases. It will be seen that the same rule would' apply as to the share of Henrietta Dorsey in the proceeds of the real estate under the nineteenth clause, and for the same reason it could not go into the residue. The testator gave the proceeds to her and her brother and sister in equal shares, and could not have intended, in case of her death, that her share should pass to her and the same brother and sister under the twentieth clause. The provisions of the will for Henrietta Dorsey all lapsed, and under its terms became intestate estate, to be distributed, as such, under the Statute of Descent."

Somewhat similar circumstances were involved in the case of *In re Gorga's Estate*, Supreme Court of Pennsylvania, 166 Pa. 269, 31 Atl. 86, wherein the court had the following to say, which, along with many decisions of other states, seems to be unmistakably in point: "After making sundry bequests, etc., the testatrix gave 'all the rest, residue, and remainder of' her estate to four persons, by name, 'to be divided among them in equal shares absolutely.' She made no provision for survivorship or gift over in case either of the residuary legatees should die in her lifetime. One of them did predecease her, and the court, rightly holding that there was a lapse as to that share, awarded the same to a niece who was entitled to take under the intestate law. This, as is clearly shown in the opinion of the orphans' court, is in accordance with the well-settled law of this state, that, as to a lapsed devise or bequest contained in a residuary clause, the testator must be regarded as having died intestate. There is nothing in the will under consideration to take this case out of the general rule. For reasons given in the opinion referred to, the decree should not be disturbed."

It is manifest from the above conclusions that the judgment of the trial court should be affirmed in part and reversed in part, that is to say: That the judgment holding that the specific legacy of Bridget Feeney lapsed

and went into the residuum is affirmed; that the portion of the judgment holding that the augmented residue be divided equally between the surviving residuary legatees is reversed, and the lapsed residuary legacy is, and becomes, a part of the testator's intestate estate to be distributed under our statute of descent and distribution.

The cause is remanded for further proceedings in accordance with the views expressed herein.

MR. JUSTICE STONE concurs in the result.