Taft, J.
Paragraph 21 of section 10 of division 4 provides.in part as follows:
“If neither Roy Avery Browning nor his widow, nor any of his children shall survive me, then, and in that event this bequest in trust shall become void, and such interest shall lapse and go to the then living beneficiaries as named under this division number four, in the proportions and in the manner as above set forth.”
However, since Roy Avery Browning survived the testator this provision never became effective.
Since the testator made no other provision for the distribution of the portion of the residue represented by the trust fund provided for by paragraph 21 of section 10 of division 4 of his will in the event of the death of Roy Avery Browning without children, then, on the death of Roy’s widow, the trust provided for in that paragraph failed for want of beneficiaries. There was, therefore, a resulting trust of the remainder of that trust fund for the benefit of the testator’s estate. See Broadrup v. Woodman, 27 Ohio St., 553.
As clearly indicated by the provisions of the will hereinbefore described in the statement of the case, the testator’s will contains general residuary provisions for disposition of any and all of the testator’s property not disposed of by other provisions of his will. Cf. Davis v. Davis, Exr., 62 Ohio St., 411, 57 N. E., 317, 78 Am. St. Rep., 725; Bane v. Wick, 19 Ohio, *59 328; Oglesbee v. Miller, Exr., 111 Ohio St., 426, 145 N. E., 846.
Where a will thus provides generally for disposition of all of the residue of a testator’s estate, any property held on a resulting trust for the testator’s estate will ordinarily be disposed of pursuant to such provisions for disposition of the residue. See Devenney v. Devenney, 74 Ohio St., 96, 77 N. E., 688; 57 American Jurisprudence, 976, Section 1452. However, where the resulting trust is of property which was already part of the residue, then, under the rule of law approved by the weight of authority outside of this state, the property so held on such resulting trust for the testator’s estate passes under the statutes of descent and distribution as intestate property.
That rule of law, which was adopted from the English common law, is that a portion of a residuary legacy or devise, which is not to a class and which lapses or is otherwise ineffective, does not inure to the benefit of the other residuary devisees or legatees unless the testator has specifically provided that it shall pass to them, but instead it passes as intestate property to the heirs or next of kin of the testator. The cases supporting and rejecting that rule of law are referred to in the annotations at 28 A. L. R., 1237, and 139 A. L. R., 868. See, also, 155 A. L. R., 1420, 1428, 106, 118. In addition, the following recently decided cases support that rule: Estate of Boyle (1950), 121 Colo., 599, 221 P. (2d), 357; Estate of Boyle (on rehearing), 123 Colo., 448, 231 P. (2d), 465; Bruno v. President, Directors & Co. (Del. Ch. 1946), 46 A. (2d), 549; Smith v. Savin (Del. Ch. 1950), 73 A. (2d), 785; In re Martz’s Estate (1947), 318 Mich., 293, 28 N. W. (2d), 108; Clark v. Case (1949), 207 Miss., 163, 42 So. (2d.), 109; Lawes, Exr., v. Lynch et al., Admrs. (1950), 6 N. J., 1, 76 A. (2d), 885; Davis v. Davis (1946), 208 S. C., 182, 37 S. E. (2d), 530.
*60 On the other hand, the following additional cases apparently reject the rule or do not apply it: Will of Reynolds (1912), 151 Wis., 375, 138 N. W., 1019; Will of Waterbury (1916), 163 Wis., 510, 158 N. W., 340; Will of Nielsen (1950), 256 Wis., 521, 41 N. W. (2d), 369; Roberts, Exr., v. Tamworth (1950), 96 N. H., 223, 73 A. (2d), 119 (by construction).
This rule of law has recently been followed in decisions by a Probate Court and a Court of Appeals in this state. Sands v. Ross (Probate Court), 89 N. E. (2d), 99; Heebsch, Exr., v. Lonsway, 81 Ohio App., 361, 79 N. E. (2d), 663. However, it has never been either approved or disapproved by this court.
As stated by Thurman, J., in Bloom v. Richards, 2 Ohio St., 387, at 391:
“The English common law, so far as it is reasonable in itself, suitable to the condition and business of our people, and consistent with the letter and spirit of our federal and state Constitutions and statutes, has been and is followed by our courts, and may be said to constitute a part of the common law of Ohio. But wherever it has been found wanting in either of these requisites, our courts have not hesitated to modify it to suit our circumstances, or, if necessary, to wholly depart from it.” (Emphasis added.)
Furthermore, although the weight of authority outside of this state on a question of law will and should be considered, its persuasiveness to this court will depend upon the thoroughness with which such question has been considered by those whose pronouncements represent that weight of authority.
In referring to this rule of law, it is said in 57 American Jurisprudence, 977, Section 1453:
“Although this rule has been consistently applied where the necessary conditions were present, there has been but little discussion of it in the cases, and *61 only brief suggestions of the reasons underlying it have been given by the courts. The principle has worked considerable dissatisfaction, even among those courts which recognize and follow it, and in a' few jurisdictions it has been changed by statute. Some courts, in the absence of any statutory change, have refused to accept the rule and, instead, have adopted the view that in the circumstances outlined, the lapsed portion of the residuary gift must be held to pass to the surviving residuary donees.” (Emphasis added.) See, also, 4 Page on Wills (Lifetime Ed.), 196, Section 1430; annotation, 28 A. L. R., 1237, 1239; note, 31 Yale Law Journal, 782.
In one of the decisions representing the weight of authority (Gray’s Estate, 147 Pa., 67, 23 A., 205), it is stated in the court’s opinion:
“® * * The rule thus established does not commend itself to sound reasoning, and is a sacrifice of the settled presumption that a testator does not mean to die intestate as to any portion of his estate, and also of his plain actual intent, shown in the appointment of general residuary legatees, that his next of kin shall not participate in the distribution at all. The rule is in fact a concession to the set policy of English law, nowhere more severely asserted than in chancery, to keep the devolution of property in the regular channels, to the heir and the next of kin, whenever it can be done.
“If the question were new in this state, speaking for myself I should not hesitate to reject the English rule as wrong in principle and subversive of the great canon of construction, the carrying out of the intent of the testator. * * *”
The rule was further criticized by the same court in Waln’s Estate, 156 Pa., 194, 197, 27 A., 59.
In another of the decisions representing the weight *62 of authority (Wright et al., Trustees, v. Wright, 225 N. Y., 329, 340, 122 N. E., 213, 217), it is stated iu the court’s opinion:
“* * * in respect of a residuary clause where the legacy which has failed and lapsed was intended to be a disposition of part of the residue. In such a case, on failure of the intended legacy of part of the residuum, the part as to which disposition has failed will go as in case of intestacy and the residuum passing under the residuary clause will not be augmented by a ‘residue of a residue.’ The reason for this distinction in most cases is not very apparent, satisfactory or convincing. The one most often given is based on the assumption that it could not have been the intent of the testator in disposing of his residuary estate that a bequest of the residue thereof should be augmented by the lapse of other bequests from such residuum. (2 Redfield on Wills [2d ed.], 118, 119.) While this course of reasoning has some apparent force where the residuum consists of a definite sum or specific property and where it might be assumed that the testator by the residuary clause intended to make a definite bequest, it is difficult to appreciate the force of the reason in such a case as the present one where the residuum to be disposed of consists of a certain portion of an estate of unknown value and where there seems to be no good ground for withholding application to the residuary clause and lapsed legacy of the principles ordinarily covering such a situation.”
Further criticism of the rule appears in the opinion by Cardozo, C. J., in Oliver v. Wells, 254 N. Y., 451, 173 N. E., 676.
Even in England, where the rule originated, it has been said “that the effect of it is to defeat the testator’s intention in almost every case in which it is applied.” In re Dunster (1909), 1 Ch. Div., 103.
*63 In support of the English common-law rule it was said by Plumer, M. R., in Skrymaber v. Northcote, 1 Swans., 566, 36 Eng. Rep., 507, where a legacy of a one-fourth share of the residue was ineffective:
“In the instance of a residue given in moieties, to hold that one moiety lapsing should accrue to the other would be to hold that a gift of a moiety of the residue shall eventually carry the whole.”
The basis of this reasoning apparently is that, where the testator has provided that certain legatees shall take three-fourths of the residue, they cannot logically take more than such three-fourths and therefore cannot take all of the residue, even where a legacy of the other one-fourth is not effective.
Such reasoning in effect begs the question and disregards the fact that the testator has by the general residuary provisions of his will expressed the intention to dispose of all of his property. On the other hand, a contrary conclusion can just as logically be reached and such contrary conclusion will fully conform with the testator’s expressed intention. For example, if it is not all disposed of because effect cannot be given to a legacy of one-fourth of the residue, then the amount represented by that one-fourth of the residue still remains in the estate and undisposed of by other provisions of the will. Unless the expressed intention of the testator is disregarded, that one-fourth can again pass through the residue where three-fourths of it will be disposed of as the testator directed. The remaining one-fourth of one-fourth still undisposed of can again pass through the residue where three-fourths of it will likewise be disposed of. If this process is continued indefinitely, the amount undisposed of will ultimately be so infinitesimal as to be unworthy of legal recognition. To say that the testator did not intend to so dispose of the whole of *64 the residue is to disregard what the testator has said in his will, and results in taking part of the residue from those to whom he said it should go and giving it to others to whom he did not say that it should go.
As stated by Mason, J., in the court’s opinion in Corbett v. Skaggs, Exr., 111 Kan., 380, 207 P., 819, 28 A. L. R., 1230:
“We regard the rule that lapsed shares of deceased residuary legatees shall be treated as intestate property as in direct conflict with the one to which this court is definitely committed, that the actual purpose of the testator, so far as it can be ascertained, must be given effect. The presumption against intestacy of any part of the estate is a means of carrying out this policy which is disregarded by taking lapsed legacies out of the residue for the benefit of those who would inherit from the decedent in the absence of a will. The reasons for allowing lapsed specific legacies to fall into the residue apply with equal force in favor of allowing all the residue to go to the surviving residuary legatees in the case of the death of one of them, instead of turning over a part of it to persons for whom other provision had been made, or who had not been referred to in the will at all. The statement sometimes made in support of the latter practice — that the share of a deceased residuary legatee cannot fall into the residue because it is itself a part of the residue — appears rather to play upon words than to point out any real difficulty.”
The amount which residuary legatees will take under the residuary provisions of a will is always indefinite and uncertain until the settlement of the testator’s estate has been completed. In these days of high estate taxes and the difficult legal questions often involved in ascertaining the amount of such taxes, such indefiniteness and uncertainty are even *65 more pronounced than when the English common-law rule was formulated. Many factors may operate to increase or decrease the amount which will be available to residuary legatees. Among these factors is the lapse or other failure of specific legacies. Bradford v. Bradford, Exr., 19 Ohio St., 546, 2 Am. Rep., 419. It is difficult to comprehend why these other factors should be permitted to increase the amount of what residuary legatees can take but a factor such as the lapse or other failure of a legacy of a portion of the residue should not be permitted to operate so as to augment the amount which the other residuary legatees can receive.
As stated in the court’s opinion in In re Bradley’s Will, 123 Wis., 186, 101 N. W., 393, 395:
‘ í * # * The very use of a residuary phrase indicates uncertainty as to what will remain of an estate, otherwise specific amounts would naturally be bequeathed. Necessarily what the residue may be cannot be known to the maker of any but a deathbed will, for his pecuniary condition may change at any time. William H. Bradley might have signed a bond for $17,000 two days before his death, and the effect .on the residue of his estate might have been the same as this marriage, and equally outside of his anticipation at the time of executing the will. We presume appellants would not have resisted inclusion in the residue of a sudden increase of testator’s fortune after the making of the will, although it might have been unexpected * *
It has been argued that the General Assembly has, by the enactment of Section 10504-73, General Code, and the former analogous Section 10581, General Code, expressed an intention that, except as provided otherwise, a devise or legacy of a part of the residue which lapses or is otherwise ineffective shall pass as intestate property pursuant to the English common-law rule. *66 However, nothing in those statutes requires that result or provides against such devise or legacy passing to the other residuary devisees or legatees to as great an extent as they provide against the consequences which would result from application of the English common-law rule. At most, they represent an effort of the G-eneral Assembly to make certain that the English common-law rule shall not be applied in certain instances, even if that rule should be recognized as the law of Ohio.
Our conclusion is that, where a will contains general residuary provisions for disposition of any and all of the testator’s property not disposed of by other provisions of the will, if a bequest or devise of a part of the residue lapses or is otherwise ineffective, that part of the residue, except as provided by statute and in the absence of provisions of the will or surrounding circumstances justifying the conclusion that the testator expressed a different intention, will ordinarily pass under such residuary provisions of the will to any other parties entitled thereunder to portions of the residue, instead of passing as intestate property.
The individual beneficiaries contend that there are provisions of the will indicating that the testator intended that they should take the five shares of the residue of the trust fund in controversy on the failure of the trusts under which they were held. At the same time, the trustee of the Masonic fund contends that there are provisions of the will indicating that the testator intended that it should receive those five shares in that event. In our opinion, none of the provisions referred to justify the conclusion that the testator expressed an intention that such shares should pass other than pro rata to the holders of the remaining 95 of the 100 shares of the residue for which he provided in division 4 of his will.
*67 The judgment of the Court of Appeals is reversed and the cause is remanded to the Common Pleas Court for further proceedings in accordance with this opinion.

Judgment reversed.

Stewart, Matthias and Hart, JJ., concur.
Weygandt, C. J., and Zimmerman, J., dissent.
Middleton, J., not participating.