BANKERS TRUST COMPANY, executor of estate of Alden B. Howland, deceased, appellee, v. WARD S. ALLEN, JR. et al., appellees and cross-appellants; BERTHA HOWLAND, cross-petitioner-appellant.

No. 51661.

(Reported in 135 N.W.2d 607)

June 8, 1965.

Herrick, Langdon, Sandblom & Belin, of Des Moines, for Bertha Howland, cross-petitioner-appellant.

Gamble, Read, Riepe, Martin & Webster, of Des Moines, for appellee Bankers Trust Company, executor.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for cross-petition-appellee and cross-appellant Ward S. Allen, Jr.

Davis, Huebner, Johnson & Burt, of Des Moines, for cross-petition-appellees and cross-appellants Almy S. Howland et al.

Kent Emery, of Des Moines, for cross-petition-appellees and cross-appellants, the known or unknown heirs of Alden B. Howland, and those persons known or unknown who may be entitled to take the intestate share of the estate of Alden B. Howland and who are otherwise unrepresented, and for all defendants who are in the military or naval service of the United States of America, and guardian ad litem for all defendants, known or unknown, who may be minors, who may be confined in a penitentiary or state hospital for insane or other institution, or judicially adjudged incompetent or under some other legal disability.

GARFIELD, C. J.—Bankers Trust Company of Des Moines, as executor of the estate of Alden B. Howland, deceased, brought this action for declaratory judgment construing his will and determining the rights of his widow, Bertha, and numerous heirs in the estate. Following trial to the court as in equity Bertha has appealed and the heirs have cross-appealed from the decree.

Decedent, a prominent Des Moines lawyer, died July 24, 1962. His will, made October 3, 1961, was admitted to probate six weeks later. Item I of the will provides for payment of debts,

taxes and expenses of last illness and burial. Items II, III and IV follow:

"Item II. If she survives me, I give, devise and bequeath the residence property occupied by me to my wife, Bertha Howland. I also give and bequeath to her all household furniture, equipment and furnishings of the home I reside in at the time of my death. In addition I give and bequeath to her one-half of my personal property including money on deposit, stocks and securities.

"Item III. If she survives me, I give and bequeath to my sister, Mary A. Howland, of Des Moines, Iowa, the remaining one-half of my personal property, plus the undivided one-half interest in the residence property located at 1712 Clark Street, Des Moines, Iowa, which I own as an heir of my deceased mother.

"Item IV. The provision made in Item II hereof for my wife if she survives me, shall be in lieu of all other claims she may be entitled to make and also in lieu of any widow's allowance pending administration of my estate."

Item V nominates plaintiff as executor to serve without bond.

The sister Mary, named in Item III, supra, predeceased testator on February 20, 1962. He acquired under her will her undivided half interest in the Clark Street property. He previously owned the remaining interest therein, as Item III states. The trial court held the property bequeathed to Mary under Item III passed to decedent's heirs as intestate property. Bertha, the widow, contends all such property except the half interest in the Clark Street property acquired from Mary passed to her (Bertha) and the will should be so construed. She concedes this half interest in the Clark Street residence descended as intestate property.

The argument for Bertha is that it was testator's intent that if either of the two beneficiaries named in the will predeceased him, the property bequeathed to her would pass to the survivor and the will should be construed to so provide.

Those who claim as testator's heirs argue and the trial court held the will contains no residuary bequest of the property bequeathed to Mary, the will is unambiguous and testator's intent

must be ascertained from the instrument itself, the bequest to Mary lapsed and—there being no residuary clause—descended as intestate property. We agree with this holding.

I. Reference should be made to the extrinsic evidence offered by Bertha to support her argument and that offered by defendants to meet it.

Decedent and Bertha were married in 1939 but did not live together until 1943. They had no children. Decedent was devoted to his widowed mother and unmarried sister Mary, with whom he lived until 1943. Bertha was not invited to their home on Clark Street nor was she welcome there. None of decedent's heirs lived in Des Moines during the last 50 years; most of them lived in the East. Decedent's father died when he was ten and his mother, with decedent, Mary and a daughter who died in 1937, moved into the home of the mother's sister and her husband in Des Moines and they lived together several years. They were grandparents of defendant Ward S. Allen, Jr. who claims half the intestate property as decedent's only heir by reason of descent from decedent's maternal grandparents.

Bertha testified none of decedent's relatives visited their home nor did he visit them, she saw no correspondence between her husband and his relatives and he told her he had no relatives. She also said she worked for the streetcar company fifteen and one-half years after she was married and never gave decedent less than $100 a month.

The record leaves no doubt decedent had many relatives of whom he was fully aware and with whom he corresponded occasionally (as at Christmas) and visited at times, especially the Allens and the Howlands. The latter claim one fourth the intestate property as heirs by reason of descent from two of the four paternal great-grandparents of decedent. One defendant-heir was a student at a college near Des Moines in 1936, decedent loaned her $200, most of which she repaid and the rest of which he forgave. The sister Mary's will was prepared under decedent's direction and contained small bequests to Ward S. Allen, Jr. and three defendant-Howland heirs.

Decedent's heirs who claim the remaining one fourth the intestate property by reason of descent from the common an-

944

cestors of his paternal grandmother (the Pierce, Chase and Cleveland heirs) are numerous and have not all been ascertained. It is doubtless true decedent did not know who all of them were.

II. Where the language of a will is ambiguous or of doubtful meaning resort may be had to extrinsic evidence as an aid in determining its meaning. However, where the language used is plain and unambiguous its meaning must be determined from the language used without resort to extrinsic circumstances. The testator's intention must be determined from what he said, not from what it may be supposed he intended to say or should have said. The question is not what testator meant to say but what he meant by what he did say.

See in support of the views just stated In re Estate of Mc-Culloch, 243 Iowa 449, 457, 458, 52 N.W.2d 67, 72, and citations; Henkel v. Auchstetter, 240 Iowa 1367, 1373–1378, 39 N.W.2d 650, 653, 654; In re Estate of Eason, 238 Iowa 98, 103, 26 N.W. 2d 103, 106; In re Will of Hagan, 234 Iowa 1001, 1007, 14 N.W. 2d 638, 641, 152 A. L. R. 1296, 1301; 95 C. J. S., Wills, sections 591, 592. See also In re Estate of Barnes, 256 Iowa 1043, 1049, 128 N.W.2d 188, 191, 130 N.W.2d 227; In re Estate of Artz, 254 Iowa 1064, 1069, 1070, 120 N.W.2d 418, 422, and citations.

Nor is extrinsic evidence admissible to vary, contradict or add to the terms of a will or to show an intention different from that disclosed by its language. Evidence of testator's intention as an independent fact, divorced from the words of the will, is clearly inadmissible. Courts will not, from oral testimony, make a will testator perhaps intended to, but in fact did not, make. In re Estate of Roberts, 240 Iowa 160, 164, 35 N.W. 2d 756, 758, and citations; 95 C. J. S., Wills, section 634. See also In re Estate of Miller, 243 Iowa 920, 929, 930, 54 N.W.2d 433, 438, 439, 36 A. L. R.2d 139.

We find no ambiguity in the will. We do not understand Bertha contends there was a patent ambiguity but thinks there was a latent one. A latent ambiguity exists where the language used does not lack certainty but some extrinsic matter outside the will renders the meaning obscure and uncertain. A classic example is a bequest "to my cousin John" when testator has two cousins named John. There is no evidence to indicate

such an ambiguity here. In re Estate of Lepley, 235 Iowa 664, 670–672, 17 N.W.2d 526, 529, and citations (disapproved on another point in Nolte v. Nolte, 247 Iowa 868, 882, 76 N.W.2d 881, 889, 56 A. L. R.2d 854).

The extrinsic evidence offered by Bertha was evidently designed to show it is unlikely decedent intended to leave any of his property to any of those claiming as heirs. But this does not indicate an ambiguity in the will. It may indicate decedent intended to say something he did not say but courts cannot draw his will to carry out a possible intent not expressed in the will. A contrary holding would nullify the requirement that wills be in writing. In re Estate of Lepley, supra, and citations.

Indeed it may be conceded testator did not intend to will any of his property to any of his heirs other than his sister Mary. They make no claim under the will. Their claim is under the statutory rules of descent. The only way decedent could vary these rules is by making an effective gift, either expressly or by necessary implication, at variance therewith. That he did not do. Certainly he made no express provision for the disposition of Mary's share if she did not survive decedent. None is claimed. There is a strong presumption (we have said "very strong") decedent did not intend a bequest not expressed in the will. In re Estate of Syverson, 239 Iowa 800, 805, 32 N.W.2d 799, 801, 802, and citations; In re Estate of Eason, supra, 238 Iowa 98, 101–103, 26 N.W.2d 103, 105, 106; In re Will of Rosnow, 273 Wis. 438, 78 N.W.2d 750, 751, 752 (disapproving In re Will of Nielsen, 256 Wis. 521, 41 N.W.2d 369, cited by Bertha); 95 C. J. S., Wills, section 633, page 898; 96 C. J. S., Wills, section 718.

The bequest to Mary in Item III is conditioned on her surviving the testator. We have held many times, and it is conceded by all, that our antilapse statute (section 633.16, Code 1962) does not apply to a bequest so conditioned. Nicholson v. Fritz, 252 Iowa 892, 896, 897, 109 N.W.2d 226, 228, and citations. This is on the theory that a bequest to one "if she survives me" manifests an intent that the bequest would lapse if the named beneficiary dies before testator. Ibid; In re Estate of Gerdes, 245 Iowa 778, 62 N.W.2d 777, 70 A. L. R.2d 210.

946

■    There being no residuary clause and no provision for the disposition of the bequest to Mary if she predecease her brother, the property bequeathed in Item III descended as intestate property to his heirs. Karolusson v. Paonessa, 207 Iowa 127, 135–137, 222 N.W. 431, and citations; Jensen v. Nelson, 236 Iowa 569, 576, 19 N.W.2d 596, 600, and citations; In re Estate of Dluhos, 246 Iowa 1043, 1051, 70 N.W.2d 549, 554; In re Estate of Davis, 253 Iowa 973, 976, 977, 114 N.W.2d 314, 316; 57 Am. Jur., Wills, section 1446.

Volume 95 C. J. S., Wills, section 615c, page 840, states: "Where the testator, intentionally or otherwise, has failed to provide in his will for the disposition of all of his property * * * or has failed to provide for a contingency which has actually occurred, such as a lapse of a legacy or devise * * * the court cannot place a construction on the will not warranted by its language, but the testator must be held to have died intestate as to such property."

Bertha contends Items II and III of the will, supra, should be construed together so as to constitute a residuary clause in favor of the two legatees therein named or the one who survives testator—in this instance, Bertha. The contention is that all dispositive provisions in this will are residuary in character and both named legatees are residuary legatees.

■    The residuary clause of a will may be defined as a disposition of that which remains after satisfaction of charges, debts and particular bequests or, as sometimes said, that not otherwise disposed of. The purpose of such a clause is to make a complete disposition of testator's estate, so no part of it may be left to pass as intestate property. In re Estate of Hartman, 233 Iowa 405, 410, 9 N.W.2d 359, 363, and citations; Moore v. McKinley, 246 Iowa 734, 756, 757, 69 N.W.2d 73, 86, 87, and citations; 96 C. J. S., Wills, section 796.

As before indicated, Bertha admits the will does not dispose of all the estate testator owned when he died by conceding the half interest he acquired in the Clark Street home from Mary descended as intestate property.

■ ■    We find no language in this will that indicates testator intended all his property, other than the half interest

in the Clark Street home, to go to the one of the two named legatees who might survive him. It is true, as Bertha urges, there is a presumption a testator intends to dispose of his entire estate. But the language of the will must be sufficient to carry the whole. The presumption referred to does not permit us to write into the will a provision omitted therefrom. Further, this presumption is not of greater force than the rule that heirs are not to be disinherited except by express words or necessary implication. Harvey v. Clayton, 206 Iowa 187, 191, 192, 220 N.W. 25. See also 95 C. J. S., Wills, section 615a, page 833; 57 Am. Jur., Wills, sections 1158, 1160.

If, however, it be conceded—without so deciding—that Items II and III of the will together constitute a residuary clause it does not follow that what would have gone to Mary, had she survived, goes to Bertha. Under the general rule, to which we are committed, the bequest to Mary descends as intestate property to testator's heirs and does not increase the share of Bertha who claims as the surviving residuary legatee. Lehr v. Switzer, 213 Iowa 658, 663, 239 N.W. 564, and citations; Brown v. Kalene, 230 Iowa 76, 79, 296 N.W. 809, 810; Nicholson v. Fritz, supra, 252 Iowa 892, 898, 109 N.W.2d 226, 229; Re Boyle, 121 Colo. 599, 221 P.2d 357, 36 A. L. R.2d 1106, 1114–1116; Buffinton v. Mason, 327 Mass. 195, 97 N.E.2d 538, 37 A. L. R.2d 1, 5; In re Brown's Estate, 324 Mich. 264, 36 N.W.2d 912; In re Will of Rosnow, supra, 273 Wis. 438, 78 N.W.2d 750; Annotations, 36 A. L. R.2d 1117, 28 A. L. R. 1237, 139 A. L. R. 870; 96 C. J. S., Wills, section 1226d, page 1083; 57 Am. Jur., Wills, section 1453. See also Leighton v. Leighton, 193 Iowa 1299, 1317, 1318, 188 N.W. 922.

Nicholson v. Fritz, supra, quotes this with apparent approval from the annotation in 36 A. L. R.2d 1117, 1118: "* * * the rule which prevails in most jurisdictions, in the absence of statute or distinctly disclosed intention or justified construction of the will to the contrary, is that if the instrument disposes of residuary property or funds to two or more persons and one or some of them renounce the gift, or predecease the testator, or for any reason are or become disentitled to take, the shares affected do not inure to the other residuary beneficiaries in augmenta-

tion of their shares but on the contrary pass as in case of intestacy." To like effect is 4 Bowe-Parker: Page on Wills, section 33.56.

We have considered the precedents Bertha cites. For the most part they are a few cases from other jurisdictions which hold, contrary to the general rule which prevails in Iowa, that a residuary legacy which fails enhances the share of the remaining residuary legatees rather than to descend as intestate property to testator's heirs. Except for Corbett v. Skaggs, 111 Kan. 380, 207 P. 819, 28 A. L. R. 1230, they are based on a statute or clearly expressed language in the will so providing.

We do not regard the precedent most relied on, In re Armstrong's Estate, 347 Pa. 23, 31 A.2d 528, as in point factually, and the decision is based on a statute designed to abolish the common-law rule as to lapse of a residuary bequest where it is apparent the testator intended not to give the next of kin any interest in his estate. We have no such statute.

In McElroy v. Fluker, Mo., 265 S.W.2d 361, unlike the will here, there was a residuary clause. The court held the whole will evinced testator's intent to will the residue to his two sisters or the survivor, if one should predecease testator. We find no such intent here.

In In re Estate of Moloney, 15 N. J. Super. 583, 83 A.2d 837, a decision of a county judge in New Jersey, the will also contained a traditional residuary clause. The judge found merit in the contention the residuary gift was to a class, not to individuals. The decision is also based on a statute providing that lapsed residuary legacies go to the surviving residuary legatees in the absence of any contrary intent manifested by testator. It could not be claimed Bertha and Mary constitute a class here. Further reference to precedents Bertha cites is deemed unnecessary.

III. On defendant-heirs' cross-appeals it is contended the trial court erred in holding Bertha elected to take under the will and is entitled to the bequest under Item II and a widow's allowance in addition; Item IV of the will required Bertha to take either the bequest or her widow's allowance, dower and exempt

property; by procuring and accepting a widow's allowance and making other claims, she elected against the will.

Item IV states the provision in Item II for Bertha "shall be in lieu of all other claims she may be entitled to make and also in lieu of any widow's allowance pending administration of my estate."

Section 635.12, Code 1962, so far as pertinent, provides: "The court shall, if necessary, set off to the widow and children of the decedent * * *, or to either, sufficient of his property * * * to support them for the period of administration * * *."

Bertha applied for, the court granted and she accepted a widow's allowance of $12,000. Her amended application stated she did not by making it waive her right to elect to take under the will. She subsequently filed such an election. The trial court upheld Bertha's right to the widow's allowance and also to take under the will on the ground testator's attempt in Item IV to require an election between these two rights was contrary to public policy and void. Also on the ground a widow's allowance is an expense of administration payment of which testator could not defeat by his will.

Undoubtedly, as defendants concede, a widow's allowance is an expense of administration, not part of the estate to be distributed. In re Estate of Miller, 143 Iowa 120, 122, 121 N.W. 700; In re Estate of Johnson, 154 Iowa 118, 120, 134 N.W. 553, 37 L. R. A., N. S., 875. See also section 3(8) of our new Probate Code, chapter 326, Acts Sixtieth General Assembly.

As defendants also in effect admit, we have held several times that public policy forbids interference with the power of the court to grant an allowance under what is now section 635.12 for the protection of decedent's widow and children during the period of administration. Miller and Johnson cases, supra; In re Estate of Peet, 79 Iowa 185, 188, 44 N.W. 354; In re Estate of Uker, 154 Iowa 428, 434, 134 N.W. 1061. See also McMinimee v. McMinimee, 238 Iowa 1286, 1298–1300, 30 N.W.2d 106, 112, 113.

These precedents directly involve antenuptial contracts in which the surviving spouse agreed to accept a stated sum in full of her claims against the estate. In the Johnson case the agree-

ment covered all claims for dower, support or maintenance out of the estate. In the Uker agreement the survivor relinquished all right to dower, exemptions, allowance for support, together with all other statutory or common-law rights. The Johnson opinion holds (page 121 of 154 Iowa): "* * * by no provision in an antenuptial contract, no matter how fair and reasonable it may be in itself in view of circumstances of the parties, can the prospective wife relinquish or cut herself off from the right to an allowance for support under the statute, provided the court finds such allowance to be a proper one when applied for."

The logic of the above precedents has been applied to a testamentary provision attempting to deprive the widow of a statutory allowance for her support. In re Estate of Frick, 192 Iowa 75, 77, 182 N.W. 790, where the provisions of the will for the widow were stated to be in lieu "of all statutory provisions in her favor." We held the widow was entitled to her statutory allowance even though she accepted the provisions of the will. See also Industrial Trust Co. v. Dean, 68 R. I. 43, 26 A.2d 482, 140 A. L. R. 1213, 1217, 1218; Scharkofsky v. Landfear, 50 Ohio App. 213, 197 N.E. 810.

An annotation in 97 A. L. R.2d 1319 on "Effect of testamentary gift on widow's right to fixed statutory allowance or allowance for support" states at page 1326, "The rationale of the view that a widow is entitled to her statutory allowance in addition to any devise or bequest under her husband's will has been best expressed by the Iowa court."

We are aware many precedents from other jurisdictions hold, under language similar to Item IV of this will, a widow cannot have the benefits given by the will and also the statutory widow's allowance and she is put to her election as to which she will take. See annotation, supra, page 1327 et seq. (Earlier annotations on a related subject appear in 4 A. L. R. 391 and 140 A. L. R. 1220.) This is the rule for which defendants contend. We are content with the view that public policy forbids a testator from requiring his widow to elect between benefits under his will and the statutory allowance during the period of administration. Accordingly we hold that applying for and receiving such allowance, paid under court order, did

not amount to a rejection of the will and that Bertha is entitled to take under the will as well as the amount so paid her.

Our conclusion finds support, in addition to the precedents previously cited, in Hill v. Kalamazoo Probate Judge, 128 Mich. 77, 87 N.W. 113; Collier v. Collier's Executors, 3 Ohio St. 369, 375, 376; In re Peebles' Estate, 157 Pa. 605, 27 A. 792; In re Stachnick's Estate, 376 Pa. 592, 103 A.2d 765, 767.

We may note also that Code section 633.1 excepts from the property a person may dispose of by will "sufficient to pay his debts and expenses of administration." And, as previously indicated, a widow's allowance is an expense of administration the widow should not be required to renounce.

We need not determine whether Bertha should have been granted a widow's allowance if, before applying therefor, she had elected to take under the will and received benefits therefrom.

IV. There were three policies of insurance on testator's life, two payable to him and the other to his executor. The insurers paid the executor nearly $20,000 as proceeds of the policies. The trial court held Bertha was entitled to these proceeds in addition to the bequest under Item II on the theory the executor held them in trust for her. Defendants assign this as error and contend the insurance money should have gone to Bertha only as part of the statutory share of a widow who has elected against the will. We affirm the trial court on this point.

The pertinent part of section 511.37, Code 1962, provides: "A policy of insurance on the life of an individual, in the absence of an agreement ·or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his creditors."

In re Estate of Clemens, 226 Iowa 31, 33, 34, 37, 282 N.W. 730, is in point. After quoting the foregoing statutory provision we say:

"This statute * * * is more than an exemption statute. It specifically provides that if there is no agreement or assignment to the contrary, the surviving spouse or the children of the decedent shall have the proceeds of the insurance, not only to· the

exclusion of the decedent's creditors, but likewise to the exclusion of his other heirs at law.

"It is recognized by this court, as well as by courts of almost every other jurisdiction, that when insurance is payable to the estate the insured may make specific disposition of the proceeds by provision to that effect in his last will and testament. But, in order that testator may make disposition of the insurance proceeds other than already provided by the statute, there must be an agreement or assignment to the contrary. A specific disposition of insurance proceeds by the terms of the will satisfies this statutory requirement. * * *

"* * * There is no mention whatever in the will of the insurance policies. It necessarily follows that the proceeds of the insurance policies passed into the hands of the personal representative, or the estate, as a trust fund, to be distributed to the beneficiaries specified in the statute."

So here, the will does not mention the life insurance. There being no agreement or assignment to the contrary it inured to the separate use of Bertha under the quoted statute. See also In re Estate of Ensign, 181 Iowa 1081, 1085, 165 N.W. 319; In re Will of Grilk, 210 Iowa 587, 589, 590, 231 N.W. 327, 329; Nolte v. Nolte, 247 Iowa 868, 874, 875, 76 N.W.2d 881, 885, 56 A. L. R.2d 854; Westinghouse Credit Corp. v. Crotts, 250 Iowa 1273, 1275–1277, 98 N.W.2d 843, 846.

V. Pursuant to stipulation the court reserved from the trial determination of who decedent's heirs are except that for the purpose of resolving the issues which were tried, and no others, it was stipulated defendant Ward S. Allen is an heir by reason of descent from common ancestors of decedent's maternal grandparents and defendants Almy S. Howland et al. are heirs by reason of descent from common ancestors of two of the four paternal great-grandparents of decedent. As stated, defendant Allen claims one half, and defendants Almy S. Howland et al. one fourth, the intestate property. Also excepted from the trial was the issue raised by Bertha that decedent died without heirs and she took the entire estate under Code section 636.41.

The trial court ruled determination of who the heirs may be and, evidently, the share of each could best be made in another

action; the executor should discontinue further search for heirs, proceed to close the estate, determine the net shares passing to the widow and heirs and pay the share of the heirs to the clerk of the trial court. We understand the share due Bertha was to be paid her.

We cannot agree determination of who are heirs and the share of each may best be made in another action. Only reason the trial court gave for this provision is that Bertha would thereby not be delayed in obtaining her share of the estate. However, her brief concedes trial as to who the heirs, if any, are should be in this action. Jurisdiction has been obtained and issues joined in the present action. To require the issues withheld from the trial already had to await determination in another proceeding apparently would involve delay and substantial duplication of costs and expenses.

Mr. Emery, court-appointed attorney for all heirs not otherwise represented and guardian ad litem for all defendants under legal disability, assigns as error the court's direction that the executor discontinue further search for heirs and pay the clerk that part of the estate passing as intestate property to heirs presently unknown. He would have the executor continue to search for heirs. All other parties approve the order to discontinue the search and we are inclined to agree with it.

In view of the stipulation of the parties before referred to, no determination is now made of who testator's heirs are. However, it is clear the executor and its attorneys have made considerable search at a good deal of expense to determine identity of the heirs. It is apparent their investigation has satisfied them that defendant Ward S. Allen, Jr. is an heir entitled to one half the estate passing as intestate property and defendants Almy S. Howland et al. are heirs entitled to one fourth such estate. The executor and its attorneys seem also to be satisfied there are heirs—in large number too—who are entitled among them to the remaining fourth of the intestate estate by descent from the common ancestors of decedent's paternal grandmother. They are the Pierce, Chase and Cleveland heirs referred to in Division I hereof, entitled respectively to one sixteenth, one sixteenth, and one eighth the intestate property.

954

The executor and its attorneys also believe, evidently with reason, further exhaustive search for all the heirs entitled to this remaining fourth of the intestate property would unduly delay the orderly administration of the estate and entail large expense which might well exhaust or exceed the fund to be distributed to them. Our approval of directing the executor to discontinue further search for heirs, under the circumstances shown, finds support in Tiller v. Norton, 123 Utah 42, 253 P.2d 618, 620.

We understand all parties assail the order requiring the executor to pay the clerk all the funds which pass as intestate property. We are satisfied it cannot be approved. In view of the issues withheld from the trial, it is at best premature. As indicated, one such issue is Bertha's claim decedent left no heirs and she took the entire intestate estate under Code section 636.41.

The executor and defendants Allen and Almy S. Howland et al. ask that the order last referred to be affirmed to the extent it directs payment to the clerk of the one-fourth share of intestate property to the Pierce, Chase and Cleveland heirs. Such an order would be no less premature than the one made. If, upon trial of the remaining issues, the claim of Bertha last referred to (asserted in Division II of her counterclaim and cross-petition) is disallowed and it is found that defendants Allen and Almy S. Howland et al. are heirs entitled respectively to half and a fourth of the intestate property and the Pierce, Chase and Cleveland heirs have not all been ascertained, payment of their combined shares of one fourth could then be ordered made to the clerk and the estate closed.

Code section 682.31 furnishes sufficient authority for such an order: "Whenever any administrator * * * shall desire to make his final report, and shall then have * * * funds * * * due, to any heir, * * * whose place of residence is unknown to such administrator * * * *or to whom payment of the amount due cannot be made* as shown by the report on file, such funds * * * may upon order of the court * * * be deposited with the clerk * * *" (emphasis added). Like provisions are sections 109, 110 of our new Probate Code, chapter 326, Acts Sixtieth General Assembly. It is unnecessary to decide whether the Iowa Code provisions or those of the Probate Code apply to the present case.

VI.   The court ordered the executor to pay the costs of this action, half thereof to be treated as a cost of administration, the other half charged against the intestate property passing to the heirs.   The fees to be allowed Mr. Emery and his predecessor Mr. Voigts were also to be paid by the executor and charged against such intestate property.   The cross-appeals of defendants Allen and Almy S. Howland et al. complain of these provisions; other parties ignore the complaint.

We are clear the fees to be allowed Messrs. Emery and Voigts should be charged to the parties they represent, not against all the property passing as intestate.   Defendants Allen and Almy S. Howland et al. have been well represented by their own attorneys whom they must pay.   If their claims as heirs are established, they will be required, under the trial court's order, to pay three fourths the fees of appointed attorneys who did not act for them and were hostile to them at least on the question of continuing the search for heirs.   Sections 118, 119 and 120 of our new Probate Code, supra, chapter 326, Acts Sixtieth General Assembly, support this conclusion.   To like effect are Iowa Code sections 638.37, 638.38 and 638.39.   See also In re Estate of Jenkins, 245 Iowa 939, 65 N.W.2d 92; In re Estate of Law, 253 Iowa 599, 602, 603, 113 N.W.2d 233, 234, 235, and citations.

We think the costs in the trial court should be taxed as part of the costs of administration in the estate.   The action was brought for a declaratory judgment pursuant to rules 261–264, Rules of Civil Procedure.   Section 11 of the new Probate Code, supra, also specifically authorizes such an action.   Section 2 of this Code provides it shall govern further proceedings in probate then pending except to the extent the court believes this would not be feasible or would work injustice.   This action was commenced a few months before the Code took effect but was transferred to probate for trial as in equity, with all matters of procedure to be governed by the Probate Code and the Rules of Civil Procedure.   No one complains of this order.

Section 47 of the Probate Code provides the costs of serving any notice by publication or otherwise given by the fiduciary shall be taxed as part of the costs of administration.   A substantial part of the costs in the trial court was incurred by serv-

ice of the long original notice by plaintiff-executor and a like notice by Bertha of her cross-petition. We see no good reason why the remaining costs in the trial court should not likewise be taxed as part of the costs of administration of the estate.

Half the costs of the appeals in this court are taxed to Bertha; the remaining half to defendants-cross-appellants.

The decree is affirmed on the widow's (Bertha's) appeal. On defendants-cross-appellants' appeal it is modified in the respects pointed out in Divisions V and VI hereof and, as thus modified, affirmed.—Affirmed on appeal of the widow; modified and affirmed on cross-appeals of defendants.

All JUSTICES concur.