IN RE ESTATE OF HENRY H. GERDES.

No. 48380.

(Reported in 62 N.W.2d 777)

Ｆｅｂｒｕａｒｙ 9, 1954.

Ｒｅｈｅａｒｉｎｇ Ｄｅｎｉｅｄ Ａｐｒｉｌ 9, 1954.

R. L. Hudson and F. E. Van Alstine, both of Pocahontas, and Kindig & Beebe, of Sioux City, for appellant-intervenors.

McManus & O'Connor, of Manson, for appellant-proponents.

A. J. Braginton, of Manson, Rider & Bastian, of Fort Dodge, and Stanley E. Felt, of Billings, Montana, for appellees.

OLIVER, J.—Henry H. Gerdes and Etta A. Gerdes, husband and wife, had lived together for many years. They had no children. Etta Gerdes died June 29, 1950. Henry Gerdes died September 20, 1951. His estate was valued at approximately $424,000. His purported will, executed May 24, 1950, was offered for probate by G. L. Scoles and O. T. Hinrichs, the nominated executors. Objections to its probate were filed by certain heirs on the grounds of undue influence and mental incapacity. Thereafter, persons claiming to be all of decedent's heirs-at-law and all of the persons who would share in his estate under the purported will, filed resistance to its probate, stating they had made and signed a family settlement agreement to administer his estate as an intestate estate, and praying it be so disposed of and the will be not admitted to probate. (These persons are referred to as the signatories.)

, The proponents of the will assailed the validity of the family settlement. Trial of this issue resulted in judgment, July 24, 1952, sustaining the validity of the family settlement and ordering that the will be not admitted to probate. However, intervenors were not parties to that proceeding and the court specifically excluded from the adjudication the rights of persons claiming property willed to predeceased wife in Item Two of the will. July 30, 1952, proponents appealed to this court from that judgment. That appeal was dismissed, February 10, 1953, for failure to comply with the Rules of Civil Procedure. In re Estate of Gerdes, 244 Iowa 332, 56 N.W.2d 897.

November 21, 1952, some heirs of decedent's predeceased wife, Etta A. Gerdes, filed in the Estate of Henry H. Gerdes, in District Court, the petition of intervention here involved, claiming, for themselves and others in their class, an interest in his estate under his will, and praying that the family settlement agreement be held invalid, the will contest be tried to a jury, and upon its admission the will be construed and the rights of intervenors established. Intervenors claim property willed Etta

in Item Two of Henry's will. This claim is predicated upon section 633.16, Code of Iowa, 1950, which provides:

"Heirs of devisee. If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will a contrary intent is manifest."

The answer of the signatories, among other things, denies intervenors would be entitled to take by way of substitution, under Code section 633.2, anything willed Etta Gerdes. If intervenors had no interest in the estate, the failure to include them in the family settlement agreement did not invalidate it and they were mere interlopers in the estate proceedings. Under order of court this issue was tried first. Upon trial the court adjudged intervenors had no interest in the estate of Henry Gerdes and that the petition of intervention be dismissed. Hence, this appeal by intervenors and proponents of the will.

■■ I. The purported will of Henry H. Gerdes starts with the recitation, in customary language, that it is such will. Following this are four paragraphs or items. Item One directs the payment of debts and expenses.

"Item Two. I give, devise and bequeath to my beloved wife, Etta (Ettie) A. Gerdes, if she shall survive me, my residence property in Manson, Iowa, to be and become her absolute property. Also one hundred seventy-two acre farm in Humboldt County, Iowa, more particularly described as the North West ˌFractional Quarter of Section 31, Township 91 North, Range 30, West of the 5th P. M. And an undivided one-half of any real estate that I may or have acquired since April 25, 1938. In addition to the foregoing I give and bequeath to my said wife all of the household goods of which I may die possessed, said household goods not to be taken into consideration in the division of personal property. Also an undivided one-half of all of my personal property. This provision for my said wife is made in lieu of her dower and distributive share.

"Item Three. All the rest, residue and remainder of my estate I leave in trust to my Executors, G. L. Scoles and O. T. Hinrichs, for the following purposes to-wit: My said Executors and Trustees shall as soon as they can after my death, without undue sacrifice in their judgment, dispose of all of the balance of my estate and after the expense of doing so have been dis-

charged, divided the same in three equal shares, one of which shares shall pass to the daughter of my sister, Magdalene Oltmans, if said daughter be still living. In the event that she shall not survive me, then the said share shall be divided share and share alike between her children that shall be living at the time of my decease.

"One of said shares shall pass to each of the five children of my deceased sister, Mary Mammen, but if any of said children of my said sister, Mary Mammen, shall not survive me, then the share that would have passed to said child shall pass share and share alike to his or her children who shall survive me.

"One of said shares shall pass to each of the four children of my deceased brother, Otto H. Gerdes, but if any of said children of my said brother shall not survive me, then the share that would have passed to said child shall pass share and share alike to his or her children who shall survive me."

Item Four nominates the executors, provides they shall have three years to reduce his estate to cash, etc.

Etta having predeceased testator, the ultimate question is whether the devises and bequests to her in Item Two of the will lapsed. The antilapse statute, Code section 633.16, prevents such lapse, "unless from the terms of the will a contrary intent is manifest."

There are five so-called sentences in Item Two of the will. The first three of these dispose of real estate. The last two concern personal property. We use the term sentence to refer to each of these five groups of words because each is followed by a period and the first word in each is capitalized. The parties agree the phrase in the first sentence in Item Two "if she shall survive me" manifests an intent that the devise of the homestead, therein made, would lapse if she died before testator and that this gift of the homestead did lapse.

Following the first sentence is a period and the so-called second sentence: "Also one hundred seventy-two acre farm" (describing it). Following this is a period and the so-called third sentence: "And an undivided one-half of any real estate * * * acquired since April 25, 1938." It is clear the so-called second and third sentences are not, in fact, sentences. Intervenors argue they lack only verbs and that these may be supplied.

However, each lacks also a subject and an object. Without the aid of the first sentence, each is meaningless.

These ambiguities were not caused by the omission of sub-jects and verbs and objects. They are due to errors in punctua-tion. They may properly and easily be clarified, without chang-ing or adding any words, merely by correcting the punctuation. This may be done by substituting semicolons for the periods following the first and so-called second sentences, thus making one sentence of the three. It would read:

"I give, devise and bequeath to my beloved wife, Etta * * *, if she shall survive me, my residence property * * * to be and become her absolute property; also one hundred seventy-two acre farm (describing it); and an undivided half of any real estate * * * acquired since April 25, 1938."

This sentence makes it clear the devises of the home, the farm and the other real estate are all subject to the same condi-tion and all lapsed when Etta predeceased Henry.

The same error as those already noted appears in the punc-tuation between sentence four and sentence five. A semicolon substituted for the period between these sentences would correct them to read: "In addition to the foregoing I give and bequeath to my said wife all of the household goods of which I may die possessed, * * *; also an undivided one half of all my personal property."

Various authorities state punctuation marks may be cor-rected to obtain a more intelligent understanding of the language used in a will. Palmer v. Crews, 203 Miss. 806, 35 So.2d 430, 436, 4 A. L. R.2d 483, 491; Platt v. Brannan, 34 Colo. 125, 81 P. 755, 114 Am. St. Rep. 147; Morton v. Flanagan, 143 Kan. 413, 55 P.2d 373, 375, 104 A. L. R. 111, 113; 57 Am. Jur. 753, Wills, section 1155; 69 C. J. 85, 86, Wills, section 1143.

With these sentences thus clarified the question at this point is whether the provision in the first sentence devising Etta the home, the farm and other real estate "if she shall survive me" applies also to the bequests of the household goods and other personal property. Otherwise stated, it is whether the condition "if she shall survive me" carries over from the first sentence to the second, and applies to the personal property as well as to the real estate.

The two sentences are part of the same paragraph or item of the will and relate to devises and bequests to the same person. We hold they should be construed together and that the provision, "if she shall survive me" applies to all bequests and devises made Etta in Item Two of the will of Henry.

Other considerations support or accord with this construction. No reason appears why the gift of the household goods and other personal property should not lapse under the same conditions as the gift of the home and other real estate. Moreover, it will be noted the first sentence defines the quantity of the estate Etta would take in the home and other real estate, "if she shall survive me * * * to be and become her absolute property." No such language appears in the sentence giving her the personal property. Although the use, in a will, of such words as "to be her absolute property", generally is not necessary to pass absolute title, such use in the first sentence and omission from the second may give rise to an inference testator intended this and other general provisions of the first sentence should be applicable as well to the second.

After the provisions for testator's widow in Item Two, the remainder of the estate is willed in Item Three, to children of testator's deceased brother and sisters, with provisions that if any of such children predeceases testator the share of such beneficiary shall pass to his or her children who survive testator. The general pattern of the will affords some indication testator did not intend property willed to beneficiaries who predeceased him should pass under Code section 633.16.

Etta executed her will the same day Henry's will was signed. From the form of the wills it appears they were drawn by the same scrivener. They were witnessed by the same persons. Etta's will gives Henry "if he shall survive me" the use for life of the old home farm and all her other real and personal property. It gives the remainder to fifteen of her relatives listed therein and provides the share of any of such named persons who does not survive her shall go to the heirs of said person.

The two wills although not joint or mutual appear to have been made together. Neither lists any beneficiaries other than the spouse and the blood relatives of the maker. This accords

with an intent that, aside from provisions for the spouse, the estate of each maker should pass to blood relatives of such maker.

In re Estate of Phelps, 147 Iowa 323, 326, 126 N.W. 328, 330, states with reference to the antilapse statute: "It is idle to say that wills could not be made but for the law, and that the statute in question became a part of the will. As we have already said, the aid of the statute cannot be, and never is, invoked where the intent of the will is manifest. The statute clearly cannot be ingrafted upon a will for the purpose of making uncertain the meaning of language that would otherwise be certain."

This is quoted with approval in Jensen v. Nelson, 236 Iowa 569, 578, 579, 19 N.W.2d 596.

We agree with the conclusion of the trial court that all provisions for Etta in Item Two of the will were conditioned upon her surviving Henry and that her prior death would render Item Two inoperative, were the instrument admitted to probate.

II. No error appears in the order of the trial court requiring that the issue whether intervenors had any interest in decedent's estate be separately tried and determined before trial of the remaining issues. This procedure accomplished the orderly disposition of the case and made unnecessary the trial of other issues. Rule 105, Rules of Civil Procedure, authorizes the court to separately hear and determine points of law raised in pleadings and rule 186 authorizes the court to order separate trials of claims or issues of facts. Under these rules the court may thus dispose of any such point or issue.

III. Proponents of the will were brought into this proceeding in the trial court and appealed from the judgment. They filed no pleadings in the trial court and participated in this appeal only to the extent of adopting intervenors' briefs and arguments. The signatories moved to dismiss proponents' appeal on various grounds. Inasmuch as they were not actively connected with the trial and appeal, and our conclusion above-noted disposes of both appeals on their merits, we do not determine this motion.

■ The trial court ordered the costs taxed to the estate because the issue determined therein was necessary to the final settlement of the estate. The judgment of the trial court is affirmed and the costs upon appeal are ordered taxed to the estate.—Affirmed.

All JUSTICES concur except MULRONEY, J., who takes no part.