In the Matter of the ESTATE of Charles F. THOMPSON, Deceased.

In the Matter of the ESTATE of Dorothy E. THOMPSON, Deceased.

W. E. S. Hutcheon and John M. Shanda, Executors.

No. 53315.

Supreme Court of Iowa.

Jan. 14, 1969.

**142**

Eugene R. Melson, Jefferson, for appellant.

Cudahy & Wilcox, Jefferson, for appellees.

LARSON, Justice.

This is a proceeding in probate upon the application of certain beneficiaries asking that designated real estate be set off to them under the last will and testament of Charles F. and Dorothy E. Thompson. The application was resisted by the residual devisee, Presbyterian Church. Pursuant to hearing, the court granted applicants the relief prayed and resister appeals. The principal issue is the correctness of the court's construction of paragraph II–D of decedents' will.

Decedents Charles F. and Dorothy E. Thompson executed a joint last will and testament on February 6, 1960. Paragraph II–D provides in part: "We also devise to the said Henry Ostendorf and Shirley Ostendorf, or the survivor thereof, the life use of the following described real estate, to-wit: The North fractional Half (N fr ½) of the Northeast Quarter (NE ¼) of Section Five (5), Township Eighty-two (82) North, Range Thirty (30), West of the 5th P.M., Greene County, Iowa, together with forty acres (40A) of our interest in the South Half (S ½) of the Southwest Quarter (SW ¼), and the West Half (W ½) of the Northeast Quarter (NE ¼), all in Section Thirty-two (32), Township Eighty-three (83) North, Range Thirty (30) West of the 5th P.M., Greene County, Iowa, and subject to said life use to Henry Ostendorf and Shirley Ostendorf, we devise the remainder of said real estate to said Richard Ostendorf upon condition that he pay the sum of $5,000.00 without interest to the Presbyterian Church of Jefferson, Iowa within two (2) years from the death of the survivor of Charles F. Thompson and Dorothy E. Thompson."

In their application for admeasurement of their interest by the executors of this will duly admitted to probate, Henry, Shirley and Richard asked that the life use of 40 acres referred to in the will be taken

from decedents' interest in the South Half (S ½) of the Southwest Quarter (SW ¼) of Section 32, and a life use of decedents' interest in the 80 acres described as the West Half (W ½) of the Northeast Quarter (NE ¼) be set off to Henry and Shirley Ostendorf, and on the condition that Richard pay the Presbyterian Church $5,000.00, the remainder to him. In other words, applicants claim the bequest was a life estate with conditional remainder in and to three parcels—the home 80 acres, 40 acres in the S ½ of the SW ¼ of Section 32, and all 80 acres of the W ½ of the NE ¼ of Section 32.

In its resistance to the Ostendorf application the church claimed a vested interest in all but 40 acres of the testators' interest in all the described real estate in Section 32. In other words, the church contends, under the plain wording of the will, only 40 acres of the 160 acres described in Section 32 were given to the Ostendorfs, and the balance of testators' interest therein was given to the church as the residual beneficiary.

The following rough sketch of the tracts of land involved in this controversy may aid in understanding the area and location of this property:

Paragraph I of this will devised the personal property and the life use of all real estate to the surviving testator.

Paragraph II of the will provided:

"The surviving testator of this Will, either Charles F. Thompson or Dorothy E.

Thompson, as the case may be, hereby devises and bequeaths by this Will, all property owned by the surviving testator, and the real estate of the other testator, in the following manner:

"A. To our friend, John Butler, now of Jefferson, Iowa, and who was our faithful employee for several years, we give the sum of $1,000.00.

"B. To our grandniece, Judy Thompson, we give our set of Haviland china.

"C. To our grandnephew, Charles W. Thompson, we give the sum of $5,000.00.

"D. To our friends, Henry Ostendorf and Shirley Ostendorf, or the survivor thereof, or to their son, Richard Ostendorf, if neither the said Henry Ostendorf or Shirley Ostendorf, survive us, we give and bequeath all personal effects and furniture and contents contained in our home at the time of the death of the surviving testator, except the set of Haviland china which has been disposed of in Par. II B above. We also devise to the said Henry Ostendorf and Shirley Ostendorf, or the survivor thereof, the life use of the following described real estate, to-wit: The North fractional Half (N fr ½) of the Northeast Quarter (NE ¼) of Section Five (5), Township Eighty-two (82) North, Range Thirty (30), West of the 5th P.M., Greene County, Iowa, together with forty acres (40A) of our interest in the South Half (S ½) of the Southwest Quarter (SW ¼), and the West Half (W ½) of the Northeast Quarter (NE ¼), all in Section Thirty-two (32), Township Eighty-three (83) North, Range Thirty (30) West of the 5th P.M., Greene County, Iowa, and subject to said life use to Henry Ostendorf and Shirley Ostendorf, we devise the remainder of said real estate to said Richard Ostendorf upon condition that he pay the sum of $5,000.00 without interest to the Presbyterian Church of Jefferson, Iowa within two (2) years from the death of the survi-

vor of Charles F. Thompson and Dorothy E. Thompson.

"E. We hearby give and devise to Elvin Dean Thompson, Alice Ann Andrew, Jean Abbott and Margaret Jongewaard the South Half (S ½) of the Northeast Quarter (NE ¼) and the North Half (N ½) of the Southeast Quarter (SE ¼) of Section Five (5) all in Township Eighty-two (82) North, Range Thirty (30) West of the 5th P.M., Greene County, Iowa, in order to carry out the intentions of the Last Will and Testament of Joseph Thompson, deceased.

"F. We hereby give and devise to our friends Donald Hall and Margaret Hall, or the survivor thereof, the life use of the West Half (W ½) of the Southeast Quarter (SE¼) of Section Sixteen (16), Township Eighty-two (82) North, Range Thirty (30) West of the 5th P.M., Greene County, Iowa, and subject to said life estate, we devise the remainder of said real estate to the children of the said Donald Hall and Margaret Hall. We also devise to the said Donald and Margaret Hall the East Half (E ½) of the Southeast Quarter (SE ¼) of Section Sixteen (16), Township Eighty-three (83) North, Range Thirty (30) West of the 5th P.M., Greene County, Iowa, upon the express condition that said devisees shall pay to the Presbyterian Church, Jefferson, Iowa, the sum of $16,000.00, without interest, within two (2) years from the death of the survivor of either Charles F. Thompson or Dorothy E. Thompson.

"G. To our nephew, Elvin Dean Thompson, we give and devise the life use of the West Half (W ½) and the Southeast Quarter (SE ¼) of the Northwest Quarter (NW ¼) of Section Twenty-two (22), Township Eighty-two (82) North, Range Thirty (30) West of the 5th P.M., Greene County, Iowa, and subject to said life use we devise the remainder of said

real estate to the children of the said Elvin Dean Thompson.

"H. To our niece, Alice Ann Andrew, we give and devise the Northeast Quarter (NE ¼) of the Northwest Quarter (NW ¼) of Section Twenty-two (22), Township Eighty-two (82) North, Range Thirty (30) West of the 5th P.M., Greene County, Iowa.

"I. To our niece, Margaret Jongewaard, we give and devise an undivided one-half interest in and to the South Half (S ½) of the Southeast Quarter (SE ¼) of Section Five (5), and an undivided one-half interest in and to the North Half (N ½) of the Northeast Quarter (NE ¼), of Section Eight (8), all in Township Eighty-two (82) North, Range Thirty (30), West of the 5th P.M., Greene County, Iowa, upon the express condition that the said Margaret Jongewaard shall pay to Alice Ann Andrew the sum of $4,000.00, without interest, within two (2) years from the death of the survivor of either Charles F. Thompson or Dorothy E. Thompson.

"J. To our friends, James Nelson and Faye Nelson, or the survivor thereof, we give and devise the sum of $3,000.00 and the life use of the South Half (S ½) of the Northeast Quarter (NE ¼), and the North one-fourth (N ¼) of the Southeast Quarter (SE ¼), all in Section Six (6), Township Eighty-two (82) North, Range Thirty (30) West of the 5th P.M., Greene County, Iowa, and we direct that subject to said life use, that the remainder of said real estate shall become a part of the remainder of our estate and shall become the property of the Presbyterian Church of Jefferson, Iowa.

"K. All the rest, residue and remainder of said estate, we give, devise and bequeath to the Presbyterian Church of Jefferson, Iowa."

Paragraph III provided for the appointment of executors of the will.

Pursuant to hearing to determine the intent of the testators under paragraph II–D, the trial court found the will was not ambiguous, construed the words used in applicants' favor, and directed the executors of the estate "to surrender any possession which they have in and to the real estate described in paragraph II–D and that possession of the property in its entirety be set off to the applicants and that the applicants and the resistor determine, which they have agreed to do, which 40 acres the applicants shall receive as their devise." It further sustained the applicants' motion for summary judgment for the purpose of settling title and interest in this real estate.

In its propositions relied on for reversal appellant asserts: (1) a decedent's will should be construed to carry out the intent of testator; (2) a will speaks as of the date of death, but is interpreted as of the date of its execution, and after-acquired property will pass only if intent is clear and explicit; (3) decedents' will being ambiguous, evidence of intent of testators is admissible.

Appellees' propositions for affirmance are: (1) the language used in the will clearly and plainly disclosed an intent to devise 120 acres of the 160 acres in section 32 to the Ostendorfs; (2) even if technical rules of construction are used to resolve a possible uncertainty, the intent is manifest without resort to parol evidence of testator declarations; (3) extrinsic parol evidence of statements made by decedent Charles Thompson as to his will were properly excluded as unnecessary, based on hearsay, and remote, and the witnesses were incompetent under section 622.4 of the Code.

There is no controversy in the facts adduced at the trial, and the bequest of the home 80 to the applicants is not questioned. Decedents' joint will was drawn by James L. Pauley, Jr., an experienced and able attorney in Jefferson, Iowa, pursuant to instructions given him by his partner after

the latter's conversation with testators. At that time the testators owned an undivided three-fourths interest in the two 80-acre tracts in section 32. Prior to the death of Mr. Thompson, the other undivided one-fourth interest was acquired by the Thompsons. Charles died on October 17, 1960, and Dorothy died on December 12, 1966. As stated, the problem presented is whether testators intended to bequeath three parcels of land to applicants, or two parcels, under the words used in paragraph II–D of the will. Appellees contend the bequest of three parcels to them is clear and unambiguous. Appellant contends the provision clearly grants applicants the home 80 acres in section 5 and only 40 acres of testators' undivided interest in the two 80-acre tracts in section 32, and appellant maintains that if any other meaning was given the paragraph, then the provision was ambiguous and proper evidence of the testators' intent was admissible and must be considered. Testimony thereof was presented by resister over applicants' objections. In its decision the court concluded paragraph II–D of the will was clear, that extrinsic evidence of intention was inadmissible and gave it no consideration. We cannot agree.

I. Since this appeal involves the construction of a will and the probate proceedings were tried as a proceeding in equity, our review is de novo. Although not bound thereby, we give weight to the findings of the trial court. In re Will of Faber, 259 Iowa 1, 141 N.W.2d 554; Rule 344(f) (7), Rules of Civil Procedure.

II. It is well settled in this jurisdiction that if the language of the will is plain, certain and unambiguous, the intention of the testator must be ascertained from the will itself and nothing else. The intention must be that which is manifest from the express language of the will or by necessary implication. In re Estate of Artz, 254 Iowa 1064, 1070, 120 N.W.2d 418, 422; In re Estate of Syverson, 239 Iowa 800, 804, 805, 32 N.W.2d 799, 801, and citations. If a simple reading of the will, using the words in their ordinary and natural sense, does not unmistakably reveal the maker's intention, the court may resort to certain accredited canons of construction to aid in resolving any doubt arising from the language used in the will. Stoffel v. Stoffel, 241 Iowa 427, 432, 41 N.W. 2d 16, 19, 14 A.L.R.2d 891; In re Estate of Zang, 255 Iowa 736, 739, 123 N.W.2d 883, 885. In Zang, we recognized those canons to be as follows: "(1) The law will impute to a testator's word such a meaning as, under all the circumstances, will conform to his probable intention and be most agreeable to reason and justice. (Citation) (2) In determining the testator's intention the court should place itself as nearly as possible in his position, and hence should take into consideration the situation of the testator and the facts and circumstances surrounding him at the time the will was executed, the amount and character of his property at the time he made the will, the testator's relation to the beneficiaries, and their condition and circumstances. 95 C.J. S. Wills § 592, page 767." We also noted therein that fact precedents are of little value, for each case must be considered in the light of the circumstances of that particular case. See In re Estate of Hurlbut, 242 Iowa 353, 358, 46 N.W.2d 66, 69.

Of course, courts have no authority to make or remake a will of a testator. The first function of the court is to determine whether there is any ambiguity in the provisions of the will and, if so found, to admit extrinsic evidence to show the intent of the testator, and to aid in resolving any doubt arising from the language used. In re Estate of Zang, supra.

We reviewed the law in will contest matters in In re Estate of Larson, 256 Iowa 1392, 1395, 131 N.W.2d 503, 504, and stated: "It is well settled law (1) the testator's intent is the polestar and must prevail; (2) his intent must be gathered from

a consideration of (a) all the language contained in the four corners of his will, (b) his scheme of distribution, (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (3) technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain."

The above statement we cited with approval recently in In re Will of Faber, supra, 259 Iowa 1, 7, 141 N.W.2d 554, 557. Also see Bankers Trust Co. v. Allen, 257 Iowa 938, 135 N.W.2d 607; In re Estate of McCulloch, 243 Iowa 449, 52 N.W.2d 67.

Our first question, then, is whether the Thompsons' intent is for any reason uncertain. Appellant argues the words used by the testators clearly show they intended to limit this bequest to 40 acres, that they correctly contemplated these acres would have to be set off to the applicants from testators' undivided interest in the whole, and intended that the rest of their interest in the tracts comprising the single unit would go to the church under paragraph II–K of their will. This contention has considerable merit and, were it not for the comma placed between the description of the two tracts, we would have no trouble agreeing with appellant.

However, the comma is there, and appellees contend, when the words used are given their natural and usual meaning and the ordinary uses of punctuation are recognized, the language of paragraph II–D clearly discloses the testators' intent to consider the tracts in section 32 as two units, and not one. They contend special significance must be given to the comma dividing the descriptions of these tracts, that the words "together with forty acres (40A) of our interest in the South Half (S ½) of the Southwest Quarter (SW ¼)" were thereby separated from the clause "and the West Half (W ½) of the Northeast Quarter (NE ¼)", indicating the tes-

tators intended these tracts to be considered separately. This contention would seem to restrict the bequest of 40 acres in the undivided interest to the first tract, and a separate bequest of all of the second tract, when in fact they did not own all of the second tract. Although, as appellees contend, a comma may be read in some instances as "and also", such a reading here would not resolve the ambiguity as to the extent of the bequest of the West ½ of the NE ¼. Were applicants to get all of that tract or just the testators' undivided interest therein? See Buck v. MacEachron, 209 Iowa 1168, 229 N.W. 693.

■ We are satisfied the insertion of this comma has a tendency to make testators' intent unclear. In the absence of the comma it seems clear to us that the bequest granted appellees 40 acres from the testators' undivided interest in the Sitterly farm consisting of two 80-acre tracts in section 32, and nothing more. We are not convinced the presence of the comma clearly alters that fact, but believe it does cause doubt which required the use of accredited canons of construction and perhaps extrinsic evidence to resolve it.

■ III. As heretofore indicated, it is the significance given to the use of this particular comma that introduces ambiguity. Doubt remains as to whether the 40-acre interest is to be taken from both tracts or from the first tract only. Canons of construction are properly resorted to in such instances, and we must endeavor to do so here.

■ Apparently the trial court and the appellees believe punctuation must be considered of *equal importance* with the ordinary and usual meaning of the words used in determining the intent of the testators. We are not prepared to accept such a general rule as conclusive of the question of whether a bequest is so clear and unambiguous as to justify rejection of any other evidence of intent. Although punctuation may be taken into consideration in constru-

ing a will and may aid in ascertaining intent, the natural sense in which words are used must prevail over punctuation. Punctuation must give way whenever it interferes with the proper and reasonable construction of a will. 57 Am.Jur., section 1155; McDermott v. Scully, 91 Conn. 45, 98 A. 350; Wilson v. Witt, 215 Ala. 685, 112 So. 222; 95 C.J.S. Wills § 612, page 816. This court stated in Buck v. MacEachron, supra, 209 Iowa 1168, 1170, 229 N.W. 693, 694: "Punctuation is ordinarily of little importance in the construction of wills, but when grammatically used may be a substantial aid in ascertaining the intent. (Citations)"

In In re Estate of Gerdes, 245 Iowa 778, 62 N.W.2d 777, 70 A.L.R.2d 210, our court clearly indicated that punctuation is of lesser importance than the meaning of the words themselves. Therein the will devised a homestead to the testator's wife "if she shall survive me", and then by other clauses in the same paragraph, separated by periods and capitalized words, left other realty and personalty to the wife. It was held that all the gifts to the wife were subject to the above quoted condition, stating at page 783 of 245 Iowa, 62 N.W.2d at page 779: "These ambiguities were not caused by the omission of subjects and verbs and objects. They are due to errors in punctuation. They may properly and easily be clarified, without changing or adding any words, merely by correcting the punctuation. This may be done by substituting semicolons for the periods following the first and so-called second sentences, thus making one sentence of the three."

In Iowa City State Bank v. Pritchard, 199 Iowa 676, 679, 202 N.W. 512, 513, this court said that if the two provisions in question in that case had been in one sentence, the meaning could not have been considered at all doubtful, but that the placing of the provisions in separate sentences introduced doubt. The court then declared: "Mere punctuation of a will is not ordinarily permitted to control its

meaning. Johnson v. [First Nat.] Bank [of Charleston], 192 Ill. 541, 61 N.E. 379; Kuehle v. Zimmer, 249 Ill. 544, 94 N.E. 957; Kern v. Kern, 293 Ill. 238, 127 N.E. 396."

We do not ignore the existence of this comma, but realize that a comma is, after all, only a comma. Its impact is limited, and here certainly invites the use of extrinsic evidence to establish the testators' true intent in its use. Therefore, even granting all the meaning which appellees would like to impart to this comma, we cannot arrive at the trial court's conclusion that the provision is clear.

Appellees themselves are not too sure of their position and argue that we should read this comma as "and also" as was done in Buck v. MacEachron, supra. In Buck, it was held that where testatrix first directed the payment of her just debts, then devised described realty constituting a homestead in the "Town of Goldfield, Iowa, together with all personal or other property after the payments provided for in Item One, of whatsoever kind and description" to her husband, the comma following the word "Iowa" would be regarded as seprating the bequest of personal property so that only the latter gift would be regarded as being subject to the payment of debts. The court stated that, at best, her intention to subject the homestead to the payment of debts was doubtful, and under the circumstances considered by the court the construction would be against such an intention. In that situation the court also said that the comma "would seem to be a substitute for, and the equivalent of, the words 'and also'." We do not quarrel with that decision, but fail to find it authority for the proposition that no ambiguity exists in the case at bar or that the use of the comma in this bequest, standing unexplained, resolves all uncertainty.

In any event, to read the comma as "and also" is very close to adding something to the provisions of the will itself, and this

courts cannot do. Canaday v. Baysinger, 170 Iowa 414, 420, 152 N.W. 562, 564.

Twenty-four commas appear in paragraph II–D alone, and it is doubtful that they were all placed with purpose and intent. For example, there is a comma between "Range Thirty (30)" and "West of the 5th P.M." the first time these words appear in the paragraph, but no comma was inserted the second time the same words appear.

This case is certainly one where great care must be exercised in adopting a construction which depends and must depend almost entirely upon the use and emphasis of a comma in a sentence. Obviously, the circumstances are necessary to resolve this dispute.

■ IV. In resolving doubt as to testator's intent, we have often said the court must place itself in the position of the testator at the time the will was executed. In re Estate of Zang, supra, 255 Iowa 736, 123 N.W.2d 883. Before it can do this, the court should be aware of the evident facts known by the testator at that time. Although it is not always clear what knowledge the testator possessed without considering extrinsic evidence, there are some matters which can be fairly assumed without resort to such evidence. Buck v. MacEachron, supra, 209 Iowa 1168, 229 N.W. 693.

■ Although the appellees would discount testators' knowledge as to the extent of their interest in the farm unit known as the Sitterly farm, we think there is merit in appellant's contention that, due to testators' extensive ownership of farm land in the area, it can be fairly assumed that they knew the difference between a full and an undivided interest in land ownership, that they knew the extent of their interest in the Sitterly farm as well as who owned the remaining interest, that they were well aware they had acquired and owned an undivided three-fourths interest in the two

80-acre tracts in section 32 and that there had been no setoff of this interest in specific acres, that they recognized these facts when they devised only 40 acres of their interest in this land and did not attempt to designate any specific 40 acres therein, and that to read this bequest as appellees desire would require a holding that testators believed they owned 40 acres in the South Half of the Southwest Quarter and all 80 acres in the West Half of the Northeast Quarter. Until these acres were set off legally or by an agreement, of course such a conveyance could not be made. In any event, it cannot be fairly assumed testators would attempt any such devise.

■ Appellees claim the benefit of testators' scheme of distribution, but we do not find it too helpful. A careful examination of the various specific bequests made to friends and relatives of the testators discloses no pattern or plan, with the exception that devises made to those who are not relatives require a cash payment to the church before the remainder is vested in the devisee. On the other hand, a close examination of the will discloses no other persons were given more than 160 acres of land, and we are not convinced the will discloses any relationship with the Ostendorfs which would require a finding that they were to be preferred and were to receive 200 acres of land rather than 120 acres plus certain personal effects.

V. Having concluded there was doubt as to the meaning of the provision relating to the Ostendorf bequest not clearly resolved by canons of construction, we must next consider the extrinsic evidence offered by the church. As to testators' intention at the time this will was executed, the resister called as witnesses Mr. Pauley, the drafter of the will and witness to its execution, Margaret Jongewaard, a niece of Charles F. Thompson, and Donald Hall, a former tenant of testators.

Mr. Pauley testified that at the request of his law partner, W. E. S. Hutcheon,

now one of the executors of this will, he drew the will in question, including the provisions of paragraph II–D. He also testified that pursuant to drafting the will he had a conversation with Charles F. Thompson and Dorothy E. Thompson, discussed the proposed contents of the will with them, and was present when they executed it. He testified the testators wanted to give what they called the home 80 acres to the Ostendorfs, but did not think it was quite a large enough unit to operate and wanted to give them an additional 40 acres. He said Thompson desired to give them 40 acres out of the property described in paragraph D of the will, that they only owned an undivided interest in it and, since the two 80's were separated, Thompson left it to him (Pauley) as to how to describe the bequest.

Margaret Jongewaard testified she had a conversation with the Thompsons in Long Beach, California, in February or March of 1960 concerning the will they had executed in February 1960. She said they seemed to want to talk about that will and told her what they had left to the family and friends. She testified Mr. Thompson told her they had left the home place to Shirley and, since they did not feel that was quite enough, they gave 40 more acres to her. She also said the 160 acres in section 32 consisting of two 80-acre tracts was known and referred to in the family as the Sitterly farm.

Donald Hall testified he had been a tenant of Charles F. and Dorothy Thompson and had known them for over 15 years prior to 1960. He said in late summer or early fall of 1960 he made a trip to Wyoming with Mr. Thompson to buy cattle. While waiting for the train bearing the cattle, he said, Mr. Thompson told him he had left the home place to Ostendorf and that he also left Ostendorf another 40 to make it 120 "because he didn't think the people could make a living on 80 acres."

Margaret Jongewaard was recalled as a resister witness and testified that at the time of their previous conversation Thompson told her the Presbyterian Church was to receive all of their property not specifically noted in the will. She also said the Thompsons had asked her and her husband to come to Iowa and farm the Sitterly farm, but due to her poor health they could not do so at that time. She said Thompson told her he had put Richard Ostendorf on that farm temporarily. She also said that when her health improved they intended to return to operate the Sitterly farm in the spring of 1961, but Mr. Thompson's death in 1960 ended that plan.

By stipulation of counsel, Exhibit 1 relative to the chain of title to the 160 acres involved herein was filed.

Applicants objected to all this evidence, generally because the will was not ambiguous, and specifically because the testimony of Pauley, as a law partner of one of the executors of the will, was barred by the dead man statute, and because the testimony of Margaret Jongewaard and Donald Hall was hearsay, and because they as beneficiaries under the will were incompetent to testify under the dead man statute, section 622.4 of the Code. This testimony was not considered by the trial court because it found the provision in controversy was not ambiguous. Apparently it did not pass upon the other grounds advanced in the objections, but we find them without merit.

■ Although it is true we have held an executor is incompetent to testify in a contest over the provisions of his testator's will under section 622.4 (In re Estate of Conner, 240 Iowa 479, 36 N.W.2d 833) because he has an interest therein, we have not extended such bar to prevent a witness from testifying as to conversations with a testator prior to his death just because he was the law partner of the appointed executor. In Conner, this court divided 5 to 4 on the issue of whether the executor himself was barred, and we are not convinced

this bar should be further expanded. We are satisfied the partner of the executor is not a party to the action within the purview of the statute.

 The contention that this testimony was inadmissible as hearsay and immaterial cannot be sustained. Pauley's testimony as to his independent conversation with the testators as to what they desired was not tainted because of the information he received through Hutcheon prior to the drafting of this will. The testimony of Jongewaard and Hall as to conversations with the testators subsequent to the execution of the will was admissible as an exception to the hearsay rule to show intent and a state of mind. Elder v. Frick, 252 Iowa 1367, 1370, 1371, 110 N.W.2d 665, 667. It was material testimony. Since it did not appear they had any interest in the outcome of this action, they are not incompetent witnesses under the provisions of section 622.4 of the Code.

 The weight of this testimony, of course, was for the court, and we believe it sufficient to sustain resister's contention.

 VI. It is our conclusion that the extent of the Ostendorf bequest was unclear, that a judicial construction of this bequest was necessary, and that both accredited canons of construction and extrinsic evidence are properly considered to determine testators' intent. So considered, we conclude testators intended to and did grant the Ostendorfs the home 80-plus acres and 40 acres to be taken from their undivided interest in the 160-acre Sitterly farm in section 32, and that the residue was to go to the Presbyterian Church. In view of this holding, the summary judgment entered below must be set aside and the cause remanded for judgment in accordance herewith.

Reversed and remanded.

All Justices concur.